United States Court of Appeals,

Eleventh Circuit.

No. 95-8250.

UNITED STATES of America, Plaintiff-Appellee,

v.

Tyrone BUTLER;  Albert Campbell, III, Defendants-Appellants.

Jan. 6, 1997.

Appeals from the United States District Court for the Southern District of Georgia.

Before BIRCH and CARNES, Circuit Judges, and MICHAEL[*], Senior District Judge. (Nos. CR294-53-5, CR294-53-1), Anthony A. Alaimo, Judge.

MICHAEL, Senior District Judge:

Appellants Tyrone Butler and Albert Campbell, III were convicted of conspiracy to possess cocaine and cocaine base with intent to distribute, in violation of 21 U.S.C. § 846.  In addition, Butler was convicted of possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).  On appeal, Butler argues that (1) the trial court abused its discretion by limiting his ability to recall the government's key witness during the presentation of his defense;  (2) application of the sentencing guidelines violates his equal protection rights because possession of cocaine base is punished at a much greater level than possession of powdered cocaine;  and (3) there was insufficient evidence to convict him because the government's key witness was not credible and there was little corroborating evidence presented to support the witness's claims.  Campbell also

---

[*]Honorable James H. Michael, Senior U.S. District Judge for the Western District of Virginia, sitting by designation.

makes numerous arguments in an effort to reverse his conviction. He contends that (1) the trial court abused its discretion by admitting evidence of his 1987 conviction for possession of cocaine; (2) the trial court abused its discretion by refusing to repeat its earlier instruction to the jury to disregard inadmissible evidence of a 1988 cash seizure; (3) the trial court abused its discretion by failing to sever his trial from that of the other defendants; (4) the trial court erred in denying his motions to suppress; (5) the trial court abused its discretion by permitting a law enforcement to testify that money seized from Campbell was packaged in "dealer folds"; and (6) the sentencing guidelines are, on their face, unconstitutional because they distinguish between cocaine and cocaine base, two substances that are chemically indistinguishable. Each of appellants' claims will be analyzed separately below.

I. *Appellant Butler's Claims*

A. *Abuse of Discretion Through Limitation on Recall of a Government Witness*

Butler argues that the trial court abused its discretion by limiting Butler's ability to recall the government's key witness regarding telephone records that were introduced after examination of the witness. Bill Noble, the government's key witness, was convicted of conspiracy charges relating to the instant case. In an effort to reduce his sentence of 360 months, Noble testified as to Butler's involvement in the conspiracy. Telephone records introduced after Noble's examination corroborated his testimony. Butler argues that he was prevented from examining Noble about the records in violation of his Sixth Amendment right to confront the

witness.[1]  The government argues that Butler never renewed his request that the witness be recalled during his presentation of evidence, and that in any case, Butler's Sixth Amendment rights were not compromised because he had ample opportunity to attack Noble's credibility during cross-examination.

"[E]videntiary rulings will be disturbed on appeal only where there appears a clear abuse of discretion." *United States v. Taylor,* 17 F.3d 333, 340 (11th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 364, 130 L.Ed.2d 317 (1994).  Moreover, "[a] trial judge has broad discretion in controlling the extent of direct and cross-examination." *United States v. James,* 510 F.2d 546, 551 (5th Cir.), *cert. denied,* 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975).  The defense made a tactical decision not to introduce the telephone records during its cross-examination of Noble.  If the records on their face impeached the testimony of Noble, further cross-examination was unnecessary.  *See Taylor,* 17 F.3d at 340 (noting that "once there is sufficient cross-examination to satisfy the Sixth Amendment's Confrontation Clause, further questioning is within the district court's discretion").  If, however, Butler sought to recall Noble to contradict the telephone records on a subject about which Noble had previously not testified, further cross-examination may have been warranted.  Assuming without so holding that additional cross-examination was permitted, the substantial evidence introduced against Butler assures that the

---

[1]Following re-direct, Butler asked to be able to later recall Noble on the subject of the telephone records but was rebuffed by the judge, who stated "No more.  We have had enough time for him."

error was harmless. Ignoring the toll records, the balance of the evidence supported Butler's convictions. Noble testified that cocaine that he received from Campbell and his brother was distributed to Butler and co-defendant Rodney Walker. When Noble stopped acting as a go-between for Campbell and Butler, Butler began to receive the cocaine directly from Campbell, a fact supported by the testimony of Noble and Walker. In addition, undercover agents witnessed Butler selling cocaine. Finally, evidence seized in two separate searches corroborated the relationship between co-defendant Marvin Campbell and Butler. Accordingly, reversal of Butler's convictions on this ground is unwarranted.

B. *Unconstitutional Application of Sentencing Guidelines*

Butler argues that his sentence of 290 months for conviction of conspiracy and possession of cocaine and cocaine base with intent to distribute violates his equal protection rights because the punishments relating to cocaine base under the sentencing guidelines are one hundred times greater than those relating to powdered cocaine. He argues that application of these guidelines leads to a disparate impact on blacks. This court has repeatedly rejected this argument within the past four years. *See, e.g., United States v. Byse,* 28 F.3d 1165 (11th Cir.1994) (holding disparate impact of sentencing guidelines on blacks was insufficient to show discriminatory intent on the part of Congress), *cert. denied,* --- U.S. ----, 115 S.Ct. 767, 130 L.Ed.2d 663 (1995); *United States v. King,* 972 F.2d 1259 (11th Cir.1992) (holding that even though the sentencing guidelines had a disparate

impact on blacks, a rational basis existed for differentiating between cocaine base and cocaine); *see also United States v. Butler,* 41 F.3d 1435 (11th Cir.1995). Butler's appeal on this ground is thus without merit.

C. *Sufficiency of the Evidence*

Butler argues finally that insufficient evidence was presented to support his conviction for conspiracy. Specifically, he contends that the government's witnesses were not credible because they had incentives to lie and the corroborating evidence was insufficient to permit a finding of a conspiracy.

Although "[s]ufficiency of the evidence is a question of law reviewed *de novo,*" an appellate court will nevertheless "view the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." *United States v. Martinez,* 83 F.3d 371, 373 (11th Cir.1996). A review of the record assures this court that a reasonable fact finder could have found sufficient evidence to convict Butler of the crimes for which he was charged. *See supra* part I.A. Butler's appeal on this ground is thus likewise unavailing on the merits.

II. *Appellant Campbell's Claims*

A. *Admission of the 1987 Conviction*

Campbell argues that the trial court abused its discretion by admitting evidence of his 1987 conviction for possession of cocaine for the purpose of proving intent. Under Federal Rule of Evidence 404(b), evidence of a prior criminal act is admissible if the evidence (1) is "relevant to an issue other than the defendant's

character"; (2) is "sufficient to support a finding that the defendant actually committed the extrinsic act"; and (3) if its probative value is not substantially outweighed by unfair prejudice. *United States v. Miller,* 959 F.2d 1535, 1538 (11th Cir.) (en banc) (applying the Fifth Circuit's *Beechum* test), *cert. denied,* 506 U.S. 942, 113 S.Ct. 382, 121 L.Ed.2d 292 (1992). Intent is always at issue when a defendant pleads not guilty to a conspiracy charge. *United States v. Hernandez,* 896 F.2d 513, 523 (11th Cir.), *cert. denied,* 498 U.S. 858, 111 S.Ct. 159, 112 L.Ed.2d 125 (1990). Campbell argues that whereas prior possession of a commercial quantity of drugs is relevant to prove intent to distribute under Rule 404(b), evidence of prior possession of drugs for personal drug use is inadmissible to establish the intent to conspire to distribute narcotics.

Although this court has not addressed whether prior personal drug use evidences an intent to distribute drugs, it previously has admitted evidence of personal drug use where the use was tied to the offenses being prosecuted. Accordingly, in *United States v. Lehder-Rivas,* 955 F.2d 1510, 1517 (11th Cir.), *cert. denied,* 506 U.S. 924, 113 S.Ct. 347, 121 L.Ed.2d 262 (1992), this court affirmed a district court's decision to admit evidence of a defendant's personal drug use that took place during the course of a conspiracy, concluding that such information was relevant to explain other events that occurred during the conspiracy. Similarly, in *United States v. Alonso,* 740 F.2d 862, 869 (11th Cir.1984), *cert. denied,* 469 U.S. 1166, 105 S.Ct. 928, 83 L.Ed.2d 939 (1985), we held that evidence that the defendants had used

cocaine with an informer was relevant to demonstrate the relationship and trust that developed between the defendants and the informer during the course of the conspiracy. In the instant case, Campbell's 1987 conviction for possession of cocaine took place more than three years prior to the events underlying the conspiracy for which he was convicted. As such, the events that led to the 1987 conviction were not intimately related to the instant conspiracy. Thus, we must determine the relevance of prior personal drug use in a subsequent, unrelated prosecution for the distribution of drugs.

The circuits are not unanimous on this issue. In *United States v. Gadison,* 8 F.3d 186, 192 (5th Cir.1993), the Fifth Circuit noted that a defendant puts his intent at issue when he pleads guilty to a conspiracy charge. *Id.* at 192 (citing *United States v. Prati,* 861 F.2d 82, 86 (5th Cir.1988)). There the defendant, convicted of distributing crack cocaine, argued on appeal that his prior state court conviction for unlawful possession of cocaine should have been excluded. The court, however, concluded that the conviction was admissible because "[a] prior conviction for possession of cocaine is probative of a defendant's intent when the charge is conspiracy to distribute." *Id.*

As indicated, other circuits have reached a contrary decision. *See United States v. Ono,* 918 F.2d 1462, 1464-65 (9th Cir.1990); *United States v. Monzon,* 869 F.2d 338, 344-45 (7th Cir.), *cert. denied* 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989); *United States v. Marques,* 600 F.2d 742, 751 (9th Cir.), *cert.*

*denied,* 444 U.S. 858, 100 S.Ct. 119, 62 L.Ed.2d 77 (1979); *Enriquez v. United States,* 314 F.2d 703, 717 (9th Cir.1963).

After considering the rationales enunciated by the various courts of appeals, we conclude that the logical extension of our current jurisprudence is to admit evidence of prior personal drug use to prove intent in a subsequent prosecution for distribution of narcotics. Intent is clearly at issue in a conspiracy prosecution; thus, we follow the Fifth Circuit's conclusion that evidence of prior use is relevant to proof of intent. Were we to decide otherwise than as indicated in the *Gadison* case, the decision below would still be affirmed, for the record below is replete with other evidence, principally unchallenged, to demonstrate to a reasonable jury the defendant's guilt beyond a reasonable doubt. Evidence was introduced that Campbell repeatedly supplied Noble with cocaine and that Noble either paid Campbell directly or wired Campbell's girlfriend the money via Western Union. In addition, Howell testified that Campbell supplied him with powdered cocaine and paid him to process it into crack cocaine. Furthermore, a search of a car in which Campbell was riding resulted in the seizure of almost $6,000 in currency packaged in "dealer folds." Finally, a search of Campbell's house led to the discovery of an electronic scale with crack cocaine residue, $10,000 in currency packaged in "dealer folds," and evidence of numerous cash expenditures that vastly exceeded Campbell's income over a three year period. Thus, we conclude that any alleged error in admitting Campbell's conviction would be harmless. Accordingly, admission of the prior conviction does not present as grounds for reversal of conviction.

B. *Failure to Repeat an Instruction to the Jury*

The district court initially permitted the government to introduce evidence of the seizure of money from Campbell during a 1988 search at an airport in St. Louis. Nevertheless, the court later ruled this evidence inadmissible under Rule 404(b) and instructed the jury to ignore the evidence. Campbell argues that the district court abused its discretion when it refused to repeat the instruction during the court's charge to the jury.

"[T]he timing of [a limiting] instruction is best left to the trial judge's discretion" because he is better able to determine whether such an instruction "would unduly emphasize the evidence in the minds of the jurors." *United States v. Dabish,* 708 F.2d 240, 243 (6th Cir.1983). Where a contemporaneous limiting instruction has been given to the jury, the court retains discretion to determine whether the instruction needs repeating at the end of trial. *United States v. Ashby,* 864 F.2d 690, 694 (10th Cir.1988), *cert. denied,* 494 U.S. 1070, 110 S.Ct. 1793, 108 L.Ed.2d 794 (1990). In the instant case, the court gave a limiting instruction when it excluded the evidence. It quite properly might have believed that repeating the instruction would unduly emphasize the 1988 search in the airport. Moreover, because the law assumes that jurors follow their instructions, *see Richardson v. Marsh,* 481 U.S. 200, 206, 107 S.Ct. 1702, 1706, 95 L.Ed.2d 176 (1987); *United States v. Chandler,* 996 F.2d 1073, 1088 (11th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 2724, 129 L.Ed.2d 848 (1994), the repetition of a limiting instruction was unnecessary. The court's refusal to repeat the instruction was not an abuse of discretion.

C. *Motion for Severance*

Campbell argues that his motion to sever his trial from the other defendants should have been granted in light of a *Bruton* problem. The government introduced a statement of co-defendant Samantha Williams that was elicited during a search of her residence. In that statement, Williams denied owning several cooking pots, pans, and a scale, all of which were used in the production of cocaine base.[2] Campbell argues that even though Williams's statement neither facially implicated nor made any reference to him, admission of the statement violated *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

Under *Bruton,* a non-testifying codefendant's statement is inadmissible if the statement facially incriminates another defendant. If, however, the statement does not facially incriminate another defendant but merely becomes incriminating after being linked with evidence that is later introduced at trial, the statement may be introduced if redacted so as "to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson,* 481 U.S. at 208, 211, 107 S.Ct. at 1707, 1709.

In the instant case, Williams denied owning the crack pots and scale. Campbell contends, however, that even though Williams did not state that the items belonged to Campbell, the inference was clear because he had fathered several of her children, financially supported Williams, and spent time in the house which was linked to

_____

[2]This statement was already redacted for trial so as to avoid *Bruton* problems; the original statement identified appellant Campbell as the owner of the drug paraphernalia.

the drug conspiracy.  That notwithstanding, Williams's statement as introduced to the jury poses no *Bruton* problem because it makes no reference whatsoever to Campbell or any other individual.  Williams simply denied ownership of certain drug paraphernalia.   Just because other evidence was introduced that permitted the inference that it was Campbell's paraphernalia is insufficient to justify applying the *Bruton* bar.   Accordingly, Campbell's appeal on this ground is denied.

D. *Motions to Suppress*

Campbell challenges four separate searches, each of which will be addressed separately.

### 1. *Search of Sarah Williams's Residence*

Campbell argues that the search of Williams's house was illegal because consent was not properly obtained from the occupants.  The Magistrate Judge held that Campbell had standing to challenge the search.  Campbell argues that consent was not validly obtained because the arresting officers had stationed other officers around the perimeter of the house in order to prevent its occupants from leaving, thus effectively seizing the occupants prior to obtaining consent.

A warrantless search undertaken without probable cause is valid if conducted pursuant to consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). Consent is valid if obtained voluntarily. *Id.* at 222, 93 S.Ct. at 2045.  "[W]hether a consent to a search was in fact "voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the

circumstances." *Id.* at 227, 93 S.Ct. at 2047. One consideration is whether "the police conduct would have communicated to a reasonable person that the person was not free to decline the officer[ ]'[s] request[ ]" to search the house. *See Florida v. Bostick,* 501 U.S. 429, 439, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991). Appellant suggests that Williams consented to the search because she was already aware that the police had surrounded the house to prevent its occupants from leaving. The Magistrate Judge, however, determined from the facts that consent was given voluntarily. Williams opened the door voluntarily, was informed that she could refuse the search, signed a consent form, and was cooperative. When Williams later argued that consent was not voluntarily given, the Magistrate Judge found the testimony of the officers more persuasive and credible.

On appeal, the factual findings of a magistrate judge as to the credibility of witnesses will only be overturned if clearly erroneous. *See Amadeo v. Zant,* 486 U.S. 214, 215, 108 S.Ct. 1771, 1772, 100 L.Ed.2d 249 (1988). Based on the evidence before the court, it cannot be said that the magistrate's decision was clearly erroneous. Accordingly, Campbell is denied relief on this ground.

2. *Search of Appellant's Residence*

Campbell challenges the adequacy of the affidavit used to establish probable cause for the search warrant that was used in connection with the search of his residence. Specifically, Campbell argues that the affidavits was based upon stale information, failed to establish probable cause, and failed to establish the affiant's basis of knowledge.

"Information must be timely for probable cause to exist, for probable cause must exist at the time the magistrate judge issues the search warrant. Stale information is not fatal where the government's affidavit "updates, substantiates, or corroborates the stale material.' " *United States v. Green,* 40 F.3d 1167, 1172 (11th Cir.1994) (quoting *United States v. Harris,* 20 F.3d 445, 450 (11th Cir.1994)), *cert. denied,* --- U.S. ----, 115 S.Ct. 1809, 131 L.Ed.2d 733 (1995). In the instant case, while some of the information may have been two years old, additional information updated and substantiated the stale material. Accordingly, the primary issue is whether the affidavit established probable cause.

> The task of the issuing magistrate [in determining whether to issue a warrant] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). This question is reviewed *de novo* by an appellate court, "tak[ing] care to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas v. United States,* --- U.S. ----, ----, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996).

The warrant to search appellant's residence was based on the affidavit of James Tuten, a Task Force Officer for the Drug Enforcement Agency. In his affidavit, Tuten stated that Campbell had been named by a federal grand jury in an indictment arising out Campbell's cocaine distribution activities. The affidavit

explained that Noble, an unindicted co-conspirator, had stated that Campbell had kept cocaine in a garage at his residence two years previously. The affidavit, however, did not state the basis for Noble's information; *i.e.,* whether Noble had ever been to appellant's house. Nevertheless, the affiant further explained that Samantha Williams had stated that Campbell conducted his drug trafficking business from her home. This information was supported by the fruits of the search of Williams's home—pots and a scale, all of which contained cocaine base residue. Howell, another person who had dealings with Campbell, told the affiant that he had been introduced to Campbell at Campbell's residence, and had repeatedly purchased quarter and half kilos of cocaine from Campbell. Finally, the affiant explored Campbell's finances to conclude that appellant had a large amount of unexplained wealth.

Based on these facts, the issuance of a warrant was appropriate. The facts asserted in the affidavit supported allegations that appellant was involved in the drug trade and created "a fair probability that contraband or evidence of a crime [would] be found" at appellant's residence. Campbell's conviction therefore will not be reversed on the basis of this search.

### 3. *St. Louis Airport Search*

Campbell challenges the introduction of evidence arising out of a consensual search of his luggage in a St. Louis airport. Campbell argues that he was illegally detained because he was not informed that he was free to ignore the police and go about his business. Because this evidence ultimately was not admitted at trial, the issue of detention and the search's validity is

irrelevant. Rather, this issue is governed by the limiting instruction, which was sufficient. *See supra* part II.B.

### 4. *Martin County Search*

Finally, Campbell challenges an automobile search. Pursuant to a lawful traffic stop, police seized almost $6000 from a car in which he was riding. Campbell argues that even though the police had probable cause to stop the vehicle, they needed a search warrant to look behind the door panel that contained some of the money.

On appeal, determinations of probable cause and reasonable suspicion should be reviewed *de novo*. *Ornelas,* --- U.S. at ----, 116 S.Ct. at 1662. The car in which Campbell was a passenger was pulled over because it was speeding and one of its headlights was out. The driver was arrested pursuant to an outstanding warrant, and a search incident to arrest resulted in the discovery of $1200 over the driver's side visor. The officer then discovered that Campbell had previously been convicted of a drug felony. Furthermore, the ownership of the vehicle was at issue because Campbell claimed to have borrowed the car. Given these facts, the officer had probable cause to search the vehicle for drugs and additional contraband. *See id.* at ----, 116 S.Ct. at 1663.

Campbell, however, argues that even though probable cause existed to permit a search, the vehicle was already under physical control of the police, thus requiring a warrant. "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Pennsylvania v. Labron,* --- U.S. ----, ----

, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996). Because the car was stopped on the highway in the process of returning to Miami, it remained readily mobile, thus justifying the search behind the loose panel.[3] Accordingly, the evidence of the search was admissible.

E. *Dealer Folds*

A dealer fold is a means of packaging money that is peculiar to drug dealers. Campbell argues that the district court erred when it admitted testimony that the money seized from Campbell during the Martin County automobile search was packaged in dealer folds because the officer's testimony regarding this issue was based solely upon the officer's experience.

"The rule is well-established that an experienced narcotics agent may testify about the significance of certain conduct or methods of operation unique to the drug distribution business...." *United States v. Washington,* 44 F.3d 1271, 1283 (5th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 2011, 131 L.Ed.2d 1010 (1995); *see also United States v. Cross,* 928 F.2d 1030, 1050 (11th Cir.), *cert. denied,* 502 U.S. 985, 112 S.Ct. 594, 116 L.Ed.2d 618 (1991); *United States v. Thomas,* 676 F.2d 531, 538 (11th Cir.1982). Testimony as to dealer folds, therefore, was admissible unless barred by Federal Rule of Evidence 403. "[A] conviction will not be overturned on the basis of a violation of Rule 403 absent a clear abuse of discretion. This rule is "an extraordinary remedy which should be used sparingly,' and, indeed, the trial court's

---

[3]That the automobile remained readily mobile is confirmed by the fact that the officer permitted Campbell to continue on his way after seizing the money.

discretion to exclude evidence as unduly prejudicial is "narrowly circumscribed.' " *Cross,* 928 F.2d at 1051. On the basis of this standard, this court does not find the admission of testimony regarding "dealer folds" unduly prejudicial.

F. *Sentencing Guidelines*

Finally, Campbell also asserts that application of the sentencing guidelines violates due process because cocaine and cocaine base are chemically indistinguishable. At the time oral argument was had in the instant case, this court was considering the identical argument in another case pending before the court. That case having been decided, we are now compelled to reject Campbell's argument. *See United States v. Sloan,* 97 F.3d 1378 (11th Cir.1996).

Accordingly, for all the reasons previously stated, appellant Campbell's conviction will be AFFIRMED.

As the convictions of both appellants are affirmed, the decision of the court below is AFFIRMED.