[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**August 29, 2005**
**THOMAS K. KAHN**
**CLERK**

_____

No. 04-15239
Non-Argument Calendar

_____

D. C. Docket No. 03-20593-CR-UUB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HUGH JAMAL PAYNE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 29, 2005)**

Before TJOFLAT, HULL and WILSON, Circuit Judges.

PER CURIAM:

On July 24, 2003, a Southern District of Florida grand jury indicted

appellant, Alexis Porro and Dinon Carrera for conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count 1); conspiracy to unlawfully obstruct, delay, and affect interstate commerce and the movement of articles and commodities in interstate commerce by means of robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951(a) (Count 2); conspiracy to use a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(o) (Count 3); attempting to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count 4); and use of a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 5). The same indictment also charged Jose Beltran with the Counts 1, 2, and 3 offenses.

Appellant's codefendants pled guilty to various counts of the indictment; appellant, though, stood trial before a jury. The jury found him guilty on Counts 2, 3 and 5, and not guilty on Counts 1 and 4. The district court sentenced appellant to concurrent prison terms of 46 months on Counts 2 and 3 and a consecutive 60 months term on Count 5, for a total of 106 months incarceration. He now appeals his convictions and sentences.

I.

First, appellant contends that the evidence was insufficient to support his

convictions because, when he drove his co-conspirators, Alexis A. Porro and Dino Carrera, to the scene where they were arrested, he neither knew of nor intended to participate in the robbery of a cocaine stash house. Appellant submits that he only learned that Porro had brought a gun along after they arrived at the warehouse— where they were going to wait for a telephone call telling them of the location of the stash house they planned to rob—and that it was only minutes before his arrest that he heard his co-conspirators discussing cocaine (because Carrera and Porro, to avoid sharing the profits, did not want anyone to know of their robbery plan).

In assessing appellant's sufficiency-of-the-evidence argument, we determine whether a reasonable fact-finder could conclude that the evidence established guilt beyond a reasonable doubt, viewing all facts in the light most favorable to the Government. United States v. Hansen, 262 F.3d 1217, 1236 (11th Cir. 2001).

To prove a Hobbs Act conspiracy, the prosecution must prove that: "(1) two or more persons agreed to commit a robbery encompassed within the Hobbs Act; (2) the defendant knew of the conspiratorial goal; and (3) the defendant voluntarily participated in helping to accomplish the goal." United States v. To, 144 F.3d 737, 747-48 (11th Cir. 1998). To sustain a conviction for conspiring to carry or use a firearm during the commission of a crime, the government must establish that the defendant (1) agreed to carry or use a firearm, (2) during and in relation to the

commission of a crime of violence, and, further, committed an overt act in furtherance of the conspiracy. See 18 U.S.C. §§ 924(c)(1)(A) and 924(o). To sustain a conviction for the substantive § 924(c)(1)(A) offense, the government must establish elements (1) and (2) above.

In this case, there was evidence that appellant assumed a fake name on the night of the crime to disguise his identity, expected to receive two ounces of cocaine for his participation in the robbery of a stash house that he knew contained at least five one-kilogram bricks of cocaine, agreed to crash the car he was driving if any problems arose, and knew that his vehicle contained the clothing and weapons for the robbery. Appellant also admitted that he helped obtain the stun gun and bullets, knew that weapons would be necessary by stating "that's why we didn't get them other guns from my guy," conceded that although he "thought about" throwing the gun away went, instead, into the warehouse and continued his participation in the conspiracy, and told Carrera and Porro that he was going to say that he knew nothing about robbing a stash house. Accordingly, once all reasonable inferences are drawn from this evidence in the Government's favor, the evidence was sufficient to prove that appellant participated in a Hobbs Act conspiracy, knowingly conspired to use a firearm in relation to a drug trafficking offense, and used a firearm in relation to such offense.

4

II.

Second, appellant argues that Carrera's and Porro's post-arrest statements, which were made in his presence in the back of the police car, were not made during the course, or in furtherance, of the conspiracy that had already ended. Therefore, he contends that the statements were inadmissible under the co-conspirator hearsay exception, and the district court erred when it admitted the statements because it thereby denied him his Sixth Amendment right to confrontation.

Appellant did not object to these statements when introduced; hence we review their introduction for plain error. See United States v. Chilcote, 724 F.2d 1498, 1503 (11th Cir. 1984); see also Fed. R. Crim. P. 52(b) (noting that errors that do not affect substantial rights must be disregarded). Plain error is error "which, when examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity and public reputation of the judicial proceedings." Chilcote, 724 F.2d at 1503 (quotations omitted).

Under the Federal Rules of Evidence, a statement is not hearsay if "[t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Moreover, "[t]he rule is consistent with the position of the Supreme

5

Court in denying admissibility to statements made after the objectives of the conspiracy have either failed or been achieved." Fed. R. Evid. 801, comment. (n. 2). "A coconspirator's participation in a conspiracy ends with his arrest, and therefore his postarrest statements are not made during the course of the conspiracy." United States v. Postal, 589 F.2d 862, 888 (5th Cir. 1979); see also Lilly v. Virginia, 527 U.S. 116, 131-34, 119 S.Ct. 1887, 1897-99, 144 L.Ed.2d 117 (1999) (explaining that when a statement against penal interest is offered by the government to establish the guilt of a codefendant or co-conspirator of the declarant, the Confrontation Clause is implicated, and is violated, because such statements are inherently unreliable and not firmly rooted).

However, "[i]t does not follow [] that because a coconspirator statement does not come within rule 801(d)(2)(E) it is inadmissible for any purpose. The statement may be probative of an issue at trial apart from the truth or falsity of its contents, and if so it may be admissible as nonhearsay because it is not offered to prove the truth of the matter asserted." See Postal, 589 F.2d at 888.

In light of the other, overwhelming evidence against appellant detailed in the discussion above, including his own post-arrest admissions both in the police car and to the Bureau of Alcohol, Tobacco, Firearms and Explosives agent who interviewed him, he failed to show that his substantial rights were affected by the

6

admission of Carrera's and Porro's post-arrest statements. Moreover, the statements at issue were made by Carrera and Porro during a conversation they had with appellant during which he made admissions. Accordingly, it was also necessary for these statements to be admitted not for their truth, but to put his own voluntary admissions into context, and a voluntary admission against the declarant's own interest is a firmly established exception to the hearsay rule. See Lilly, 527 U.S. at 127, 119 S.Ct. at 1895.

### III.

Third, appellant contends that the testimony of ATF Special Agent Steve McKean as to his subjective views of the meaning of comments in the tape-recorded conversations played at trial was inadmissible lay opinion testimony. Once again, we review this issue for plain error, since appellant failed to object at trial.

Testimony in the form of opinions or inferences of a witness who is not testifying as an expert, "is limited to those opinions and inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Moreover, the witness's perceptions may

7

be interpreted in light of the witness's experience. <u>See</u> <u>United States v. Butler</u>, 102 F.3d 1191, 1199 (11th Cir. 1997) ("The rule is well-established that an experienced narcotics agent may testify about the significance of certain conduct or methods of operation unique to the drug distribution business. . . .") ( internal quotations omitted).

A review of the trial transcript reveals that Agent McKean's testimony was based on his 16 years of experience as an ATF agent, knowledge of drug lingo and the Spanish language, his first-hand perception of the conversations heard on the recordings as a participant, and the need to put often fragmented portions of the co-conspirators' statements in context. In sum, appellant has failed to demonstrate error that is plain and, moreover, that his substantial rights were adversely affected thereby.

IV.

Fourth, appellant contends that his convictions and sentences should be reversed because the court reporter failed to transcribe the audiotaped evidence played at trial, and because he has a new attorney on appeal who was "unable to ascertain the procedure for the playing of the tapes." He says that the record is insufficient to show that the tapes were even understandable, much less what or how much of each tape actually was played.

"The right to a new trial based on a deficiency of the record [] is 'premised upon the district court's inability to reconstruct the record.' A reconstructed record, even if not identical to the original trial transcript and exhibits, will provide an appellant with sufficient due process so long as it can 'accord effective appellate review' of the issues raised on appeal." United States v. Charles, 313 F.3d 1278, 1283 (11th Cir. 2002) (internal citation omitted). "[I]f a new attorney represents the appellant on appeal, a new trial is necessary if there is a substantial and significant omission from the trial transcript." Id.

Here, we were able to examine the evidence that was not transcribed at trial because the audio recordings and their written translated transcriptions were made a part of the record. Thus, we find no reversible error in the court reporter's failure to fully transcribe the recorded evidence presented at trial.

V.

Fifth, appellant challenges his sentences. He acknowledges that the court was required to sentence him to prison for the statutorily mandated minimum 60 months for his Count 5 firearms offense and that such sentence was required to be imposed consecutively to his Counts 2 and 3 sentences. In light of United States v. Booker, 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), however, he says that the court could have imposed a sentence on Count 5 either lower than the

9

statutory mandatory minimum or concurrently to his sentences on Counts 2 and 3, or both. Regarding Count 5, he claims that the jury verdict, which stated that it found appellant guilty as charged, was inadequate to establish beyond a reasonable doubt that he carried or used a firearm as Count 5 alleged. Finally, in his reply brief, he argues that Booker invalidates the entire sentence package because the court indicated that it was bound by the Sentencing Guidelines.

Because appellant did not raise a Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), objection (which Booker made applicable to the federal sentencing system) in the district court, we review his Booker claims for plain error.

Appellant says that both types of Booker error occurred here. See United States v. Shelton, 400 F.3d 1325 (11th Cir. 2005) (holding that there are two types of Booker error: (1) the Sixth Amendment ("constitutional") error of using judge-found facts to increase a defendant's sentence under a mandatory guideline system; and (2) the "statutory" error of applying the Guidelines as mandatory, as opposed to advisory.

As for his claim of constitutional error, appellant offers no legal basis for his argument that the Count 5 jury verdict stating that the defendant is guilty as charged in the indictment was insufficient to satisfy Booker's holding that the facts

essential to the imposition of a sentence for an offense be found by the jury or admitted by the defendant. Given the court's charge to the jury, we do not hesitate in concluding that the jury, by its verdict, found that appellant engaged in the criminal conduct Count 5 alleged. Thus, there is no plain error of constitutional dimension. See Humphrey, 164 F.3d at 588.

Appellant's claim of statutory error concerns his 60-months consecutive sentence on Count 5 for carrying or using a firearm in relation to a drug trafficking offense. The district court was bound to apply the mandatory minimum sentence found in § 924(c)(1)(A)(i) and apply it consecutively to appellant's sentences on Count 2 and 3. The court therefore did not err, much less commit plain error.

Finally, concerning his claim of statutory error in the imposition of his sentences on Counts 2 and 3, because appellant did not present this claim in his opening brief, it is waived. See United States v. Levy, No. 01-17133, manuscript opinion at 13-14 (11th Cir. July 12, 2005) (explaining that this court's prudential rule that issues not raised in the opening brief are abandoned applies to defendants who attempt to belatedly raise a Booker argument).

AFFIRMED.