[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 25, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-16118
Non-Argument Calendar

_____

D. C. Docket No. 03-20972-CR-MGC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FREDERICK THOMAS HARRINGTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(October 25, 2006)**

Before TJOFLAT, DUBINA and PRYOR, Circuit Judges.

PER CURIAM:

Appellant Frederick Thomas Harrington appeals his convictions and

sentences for his role in a marijuana trafficking operation in which he sailed boats from Jamaica to south Florida with hidden compartments full of marijuana. Harrington was also involved in a conspiracy that was the subject of a different prosecution in which he trafficked marijuana in Hernando County, Florida. On appeal, Harrington argues that the district court: (1) erred in denying his motion to suppress wiretap evidence; (2) abused its discretion in instructing the jury venire; (3) abused its discretion in allowing the government to introduce evidence pursuant to Fed. R. Evid. 404(b); (4) abused its discretion in denying his motion for a mistrial based on prosecutorial misconduct; and (5) erred in sentencing Harrington based on a larger drug amount than the one found in the jury's special verdict.

## A. Wiretap Evidence

### 1. Staleness

Harrington first argues that the district court erred in finding that stale information provided by the confidential informant ("CI") was updated and corroborated. The information was stale because the CI had not been involved in the conspiracy for a year, surveillance revealed only that Harrington had minimal contacts with some of his "customers," and there was no evidence that he was involved in a continuous conspiracy.

We review *de novo* the legal sufficiency of a wiretap application presented

2

to a district court. *See United States v. Butler*, 102 F.3d 1191, 1199 (11th Cir. 1997) (reviewing *de novo* the sufficiency of an affidavit supporting a search warrant). We review the district court's findings of fact on a motion to suppress only for clear error, but review its application of law to those facts *de novo*. *United States v. Jackson*, 120 F.3d 1226, 1228 (11th Cir. 1997).

"[T]he probable cause needed to obtain a wiretap must exist at the time surveillance is authorized." *United States v. Domme*, 753 F.2d 950, 953 (11th Cir. 1985) (citations omitted). The probable cause standard is not satisfied if:

> the government can demonstrate only that the items to be seized could have been found at the specified location at some time in the past. Rather, the government must reveal facts that make it likely that the items being sought are in that place when the warrant issues. . . . The length of time between the date on which all of the facts supporting probable cause were known and the date the warrant was issued is only one factor. Probable cause is not determined merely by counting the number of days between the facts relied upon and the warrant's issuance. Rather, the probable cause standard is a practical, nontechnical one. When criminal activity is protracted and continuous, it is more likely that the passage of time will not dissipate probable cause. In such circumstances, it is reasonable to assume that the activity has continued beyond the last dates mentioned in the affidavit, and may still be continuing. Time becomes less significant in the wiretap context, because the evidence sought to be seized is not a tangible object easily destroyed or removed. Therefore, when police describe telephone activity occurring over an extended period of time, the stale information issue should be construed less rigorously.

3

*Id.* (citations omitted).  Even assuming that an affidavit is stale, "such information is not fatal where the government's affidavit updates, substantiates, or corroborates the stale material."  *United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000) (quoting *United States v. Magluta*, 198 F.3d 1265, 1272 (11th Cir. 1989)).

After reviewing the record, we conclude that the district court did not err in denying Harrington's motion to suppress the wiretap based on facts found in the affidavit.  First, the affidavit for the wiretap stated that Harrington was involved in two continuing drug importation conspiracies, so it was reasonable for the issuing magistrate to assume that the activity mentioned in the affidavit was ongoing.  Further, the government updated and corroborated the information presented by the CI by surveilling Harrington and determining that he: (1) regularly met with people that the CI named as his customers; (2) traveled to Montego Bay, Jamaica; (3) traveled to Miami at least once and returned with a large cardboard box in the bed of his truck; and (4) had a freezer in his garage for storing the marijuana, as previously stated by the CI.  Thus, the district court  did not err because there was probable cause for the wiretap.

### 2. Omissions and Misrepresentations

Harrington further argues that the affidavit omitted the fact that the CI was a drug addict and former employee of Harrington's shrimping business.  Further, the

4

CI's information was not corroborated because the surveillance merely confirmed that Harrington was in contact with his fellow shrimpers. Harrington asserts that the affiant knowingly and intentionally made false representations in the wiretap application.

In order to suppress evidence obtained using a wiretap, a defendant must carry his burden of proving that (1) the alleged misrepresentations or omissions were knowingly or recklessly made by the affiant, and (2) the result of excluding the alleged misrepresentations and including the alleged omissions would have been a lack of probable cause for issuance of the warrant. *United States v. Novaton*, 271 F.3d 968, 986-987 (11th Cir. 2001) (citations omitted). Even though law enforcement officers observe circumstances which could have innocent explanations, it does not mean that probable cause does not exist. *See United States v. Reeh*, 780 F.2d 1541, 1544-1545 (11th Cir. 1986) (holding that apparently innocent circumstances can justify an officer's reasonable suspicion of illegal activity when considered, in light of the officer's experiences, with all of the circumstances).

We conclude from the record that the district court correctly found that the wiretap application did not omit or misrepresent any information that resulted in a lack of probable cause. Harrington did not present any evidence to support his

argument that the affidavit contained omissions and misrepresentations. Further, Harrington did not present any evidence to show that the affiant knew that: (1) the CI was one of Harrington's former shrimping employees or that he was fired from that position; (2) the CI received immunity for the information he provided; or (3) information about the location of a freezer in Harrington's garage was false. Contrary to Harrington's assertion, the affidavit did state that the information was reliable. Harrington's claim that the affidavit misrepresented his fellow shrimpers as customers is meritless because the affidavit stated that his marijuana customers were mainly in the shrimping industry.

**B. *Jury Venire Instructions***

Next, Harrington argues that the district court abused its discretion in stating to the jury venire during *voire dire* that a jury could only convict him using evidence brought against him in court. Harrington claims that this statement, coupled with the district court's comments that "CSI" evidence would not be required to convict Harrington, lessened the burden of proof and undermined the court's reasonable doubt instruction.

Where a party timely objects, we review the legal correctness of a jury instruction *de novo*, but defer to the district court on questions of phrasing absent an abuse of discretion. *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir.

6

2000). We review a "district court's determination whether to strike an entire jury panel for manifest abuse of discretion." *United States v. Trujillo*, 146 F.3d 838, 842 (11th Cir. 1998) (citations omitted).

"Generally, district courts have broad discretion in formulating jury instructions provided that the charge as a whole accurately reflects the law and the facts, and we will not reverse a conviction on the basis of a jury charge unless the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process." *Prather*, 205 F.3d at 1270 (citations and internal quotations omitted). A jury is presumed to have followed the district court's comprehensive instructions. *United States v. Ramirez*, 426 F.3d 1344, 1352 (11th Cir. 2005).

Here, we conclude from the record that the district court did not abuse its discretion by telling the jury venire that it could only convict Harrington based on evidence presented in court. The district court's use of the word "convict" was a matter of phrasing and did not change the burden of proof. Additionally, the district court did not err by questioning jurors about whether they would be able to separate television shows from the facts of the case and stating that there may not be "CSI" evidence presented to them. The district court's statements were not actual instructions and did not inaccurately reflect the law. Further, the district

7

court instructed the paneled jury, before opening arguments, on the applicable burden of proof, and the jury is presumed to have followed this instruction. Thus, the district court did not abuse its discretion.

## C. Rule 404(b) Evidence

Harrington also argues that the district court abused its discretion in allowing the government to introduce seized marijuana and other items relating to the Hernando Conspiracy from the Le Club apartment.

We review properly preserved challenges to the district court's rulings on admission of evidence for an abuse of discretion. *Jiminez*, 224 F.3d at 1249. A court abuses its discretion when its decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005), *cert. denied*, *Pless v. United States*, 126 S. Ct. 1809 (2006).

Evidence showing "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would [otherwise] be" is "[r]elevant evidence," and "[a]ll relevant evidence is [generally] admissible" at trial. Fed. R. Evid. 401, 402. However, even if evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

Fed. R. Evid. 403.  However, this rule is an "extraordinary remedy. . . which should be used sparingly since it permits the trial court to exclude concededly probative evidence."  *United States v. Wright,* 392 F.3d 1269, 1276 (11th Cir. 2004), *cert. denied*, 544 U.S. 968, 125 S. Ct. 1751 (2005) (quoting *United States v. Fallen*, 256 F.3d 1082, 1091 (11th Cir. 2001)).  Rule 404(b) prohibits all evidence of "other crimes, wrongs, or acts" to prove that a person is of a character that would commit the crime charged, but it permits such evidence to prove, among other things, motive, intent, or absence of mistake or accident.  *Baker*, 432 F.3d at 1204; Fed. R. Evid. 404(b).

We apply a three-part test for determining the admissibility of evidence under Rule 404(b).  *United States v. Calderon*, 127 F.3d 1314, 1330 (11th Cir. 1997).  "First, the evidence must be relevant to an issue other than the defendant's character."  *Id*.  Second, the government must show, by a preponderance of the evidence, that the defendant actually committed the extrinsic act.  *United States v. Bowe*, 221 F.3d 1183, 1192 (11th Cir. 2000).  "Third, the probative value of the evidence must not be substantially outweighed by unfair prejudice."  *Calderon*, 127 F.3d at 1330.  As for the third prong of the test, "[i]n measuring the probative value of the evidence, the judge should consider the overall similarity of the extrinsic and charged offenses."  *United States v. Beechum*, 582 F.2d 898, 915 (5th

9

Cir. 1978). "If they are dissimilar except for the common element of intent, the extrinsic offense may have little probative value to counterbalance the inherent prejudice of this type of evidence." *Id*. Also, we have stated that "[t]he greater the government's need for evidence of intent, the more likely that the probative value will outweigh any possible prejudice." *United States v. Delgado*, 56 F.3d 1357, 1366 (11th Cir. 1995) (citation omitted).

In the context of a conspiracy charge, when the defendant pleads not guilty, he has made his intent a material issue. *United States v. Matthews*, 431 F.3d 1296, 1311 (11th Cir. 2005), *petition for cert. filed*, 74 U.S. L.W. 3619 (U.S. April 24, 2006) (No. 05-1355). (quotations omitted). "Evidence of such extrinsic evidence as may be probative of a defendant's state of mind is admissible unless [the defendant] affirmatively take[s] the issue of intent out of the case." *Id*. (citation omitted).

After reviewing the record, we conclude that the district court did not abuse its discretion by allowing the government to introduce the Hernando conspiracy evidence seized from the Le Club apartment. First, the marijuana, yellow note pads, satellite phone box, and other items seized from the Le Club apartment are relevant because they show that Harrington knew that there was marijuana onboard the Blue Moon, the boat used in the Jamaican conspiracy, and that he intended to

10

bring it into the United States. Second, these items were found during a search of the Le Club apartment, which was rented by Harrington. This satisfies the preponderance of the evidence standard and fulfills the second prong of the 404(b) admissibility test. Further, the probative value of the Hernando conspiracy outweighed any possible prejudice because the two acts were similar in that they both involved the smuggling and distribution of large quantities of marijuana in south Florida. Lastly, the district court provided an extensive limiting instruction.

## D. Prosecutorial Misconduct

Harrington argues that the government violated his Fifth Amendment rights by stating, during its closing argument, that he lied. Harrington alleges that the government also violated his right to a fair trial by stating that defense counsel was attempting to distract the jury. Lastly, the government improperly shifted the burden of proof by arguing that Harrington had subpoena powers.

"In reviewing a claim of prosecutorial misconduct, we must assess (1) whether the challenged comments were improper, and (2) if so, whether they prejudicially affected the substantial rights of the defendant." *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1177 (11th Cir. 2006). "In order to assess the prejudicial impact of a prosecutor's statements, we must evaluate them in the context of the trial as a whole and assess their probable impact on the jury."

11

*United States v. Hernandez*, 145 F.3d 1433, 1438 (11th Cir. 1998). "[W]hile a prosecutor may not comment about the absence of witnesses or otherwise attempt to shift the burden of proof, it is not improper for a prosecutor to note that the defendant has the same subpoena powers as the government, 'particularly when done in response to a defendant's argument about the prosecutor's failure to call a specific witness.'" *Id*. at 1439. (quotations omitted). "To warrant reversal of a verdict prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *United States v. Thomas*, 8 F.3d 1552, 1561 (11th Cir. 1993). "[We have] noted that an unflattering characterization of a defendant will not provoke a reversal when such descriptions are supported by the evidence." *United States v. Tisdale*, 817 F.2d 1552, 1555 (11th Cir. 1987) (quotations omitted).

We conclude that the district court did not err in denying Harrington's motion for a mistrial because the government's statements that Harrington had lied were supported by the evidence. Harrington lied to the authorities by stating that he departed from the Dry Tortugas and then lied again by stating that he was coming from the Cayman Islands. Testimony presented at trial established that the Blue Moon actually had departed Jamaica. Therefore, the government's statements that Harrington lied were supported by the evidence and were not prosecutorial

misconduct. Further, while the government's comments during closing argument that defense counsel was employing "smoke" to distract the jury from the facts of the case were improper, they were not so pronounced or persistent that they permeated the entire trial atmosphere. Lastly, the government's statements that Harrington had subpoena powers did not constitute prosecutorial misconduct because the government was responding to Harrington's argument that the government chose not to call several witnesses.

### E. Booker Error

Finally, Harrington argues that the district court violated his Sixth Amendment rights, pursuant to *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), when it increased his base offense level based on a drug amount that was higher than that found by the jury's special verdict.

If, as here, a defendant raises his *Booker* objection to the district court's application of the Sentencing Guidelines at his sentencing, we review the issue *de novo*, and reverse "only if any error was harmful." *United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005). We have held that there are two types of Booker errors: (1) constitutional error resulting from enhancements based on judicial fact-finding; and (2) non-constitutional statutory error resulting from mandatory application of the Sentencing Guidelines. *United States v. Shelton*, 400 F.3d 1325, 1330-31 (11th

13

Cir. 2005).

There is no error, as is the case here, when a sentencing court, after *Booker*, makes factual determinations, or extra-verdict enhancements, that go beyond a defendant's admissions if the sentencing guidelines are applied in an advisory manner. *United States v. Chau*, 426 F.3d 1318, 1323-1324 (11th Cir. 2005) (holding that a sentencing court did not err in finding facts that went beyond those found in the indictment by a preponderance of the evidence in an advisory guidelines scheme). A district court must, however, find these facts by a preponderance of the evidence. *Id*. We have noted that it is not *Booker* error for a sentencing court to find facts that differ with those found by a jury in a special verdict form. *United States v. Duncan*, 400 F.3d 1297, 1304-05 (11th Cir.), *cert. denied*, 126 S. Ct. 432 (2005) (reviewing for plain error, and holding that it is not *Booker* error for a sentencing court to consider acquitted conduct outside of a special verdict if the conduct is proven by a preponderance of the evidence and the ultimate sentence does not exceed the statutory maximum for the offense contained in the jury verdict).

Here, the record demonstrates that Harrington was sentenced after *Booker*, under an advisory guidelines system, and, thus, there was no *Booker* error. The jury's special verdict held Harrington accountable for only 100 kilograms or more

14

of marijuana as to each count, and, thus, the statutory maximum for Harrington's offense is 40 years imprisonment.  *See* 21 U.S.C. §§ 841 (b)(1)(B)(vii) and 960(b)(2)(G).  The district court considered the advisory guidelines and the 18 U.S.C. § 3553(a) factors in imposing sentence.  Harrington's 151-month sentence was well below the statutory maximum authorized by the jury's verdict and at the low end of the guideline range of 151-188 months imprisonment.  Thus, Harrington's sentences were reasonable.

For the above-stated reasons, we affirm Harrington's convictions and sentences.

**AFFIRMED.**