[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

----------------------------------------

No. 07-12456
Non-Argument Calendar

----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 21, 2008
THOMAS K. KAHN
CLERK

D.C. Docket  No. 06-00032-CR-001-CAR-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONIAL IRICK,

Defendant-Appellant.

----------------------------------------------------------------

Appeal from the United States District Court
for the Middle District of Georgia

----------------------------------------------------------------

**(August 21, 2008)**

Before EDMONDSON, Chief Judge, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Anthonial Irick appeals his convictions for possession with intent to

distribute over five kilograms of cocaine, 21 U.S.C. § 841(a)(1), and possession of

a firearm during a drug trafficking crime, 18 U.S.C. § 924(c)(1). No reversible error has been shown; we affirm.

Irick first argues that the district court erred in denying his motion to suppress the drugs and gun found in his truck; he contends that the officer's continued detention of him after the conclusion of a valid traffic stop was unsupported by reasonable suspicion. In considering the district court's denial of a motion to suppress, we review determinations of fact for clear error and the application of law to the facts de novo. United States v. Boyce, 351 F.3d 1102, 1105 (11th Cir. 2003).[1]

An officer may extend the duration of a traffic stop to investigate suspicious circumstances that come to his attention if the officer's suspicion is reasonable and the extended seizure is brief. United States v. Harris, 928 F.2d 1113, 1117 (11th Cir. 1991). Reasonable suspicion is measured under the totality of the circumstances and in the light of the detaining officer's knowledge. United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990).

Here, Officer Jeff Bray testified that he initially stopped Irick, who was traveling east on Interstate 20, around 2 p.m. for swerving into the emergency lane and because his tag number was obscured by a tinted cover. Irick told Bray that he

---

[1]In addition, we construe all facts in the light most favorable to the prevailing party. Id.

was driving home to South Carolina after being in Atlanta for the weekend, he had been driving since lunchtime, and that he swerved into the emergency lane because he was eating. Bray saw fast food containers, including some for breakfast food, on the console, which dispelled Bray's concerns that Irick was impaired.

But Officer Bray became suspicious of Irick -- and continued the detention -- for the following reasons: (1) Irick was only an hour outside of Atlanta at 2 p.m. but the breakfast containers in Irick's truck were for items not sold past 10:30 or 11 a.m., and in Bray's experience, drug transporters stopped only to eat; (2) though Irick said he stayed in Atlanta for the weekend, Bray did not see luggage in the truck; (3) I-20 was a major drug trafficking corridor in Georgia; and (4) Bray, a trained paramedic, saw Irick's carotid artery throbbing and noticed that Irick did not want to make eye contact with him. Bray ran Irick's license -- which came back valid -- and questioned him more about where he had been over the weekend; Irick told Bray he had visited his sister in Atlanta. Bray then explained his suspicions to Irick and asked if he could look in the truck. Irick told Bray that he had a gun in the console but no other illicit materials, and he gave Bray consent to

3

secure the weapon and search the truck.[2]  Bray discovered a black nylon bag near the floorboard which contained several bricks of cocaine.

We conclude that the district court did not err in denying Irick's motion to suppress because objective reasonable suspicion existed that Irick was engaged in other criminal activity and that reasonable suspicion justified the detention up to the point Irick consented to the search.[3]  We first note that Bray's suspicions arose during his initial questioning of Irick, while the original traffic stop was going on. And Bray articulated particularized objective bases for his suspicions, including the presence of food containers in Irick's car coupled with Bray's knowledge about drug trafficking, Irick's lack of luggage in the light of his explanation that he had been in Atlanta for the weekend, his nervousness, and that I-20 is a known drug corridor.  See United States v. Hernandez, 418 F.3d 1206 (11th Cir. 2005) (considering food containers in the defendant's car, the purported length of defendant's trip and small amount of luggage, and defendant's nervousness in concluding that a traffic stop did not violate the Fourth Amendment).

Although each bases alone may not have been strongly probative of criminal activity, under the totality of the circumstances and based on Bray's knowledge of

---

[2]Bray obtained Irick's consent to search the truck approximately eight minutes into the stop.

[3]Irick does not challenge the lawfulness of the initial traffic stop, his consent, or the duration of his detention.

drug interdiction, the circumstances rose to the level of reasonable suspicion. See

Tapia, 912 F.3d at 1370 (reasonable suspicion requires that the officer "be able to

point to specific and articulable facts which, taken together with rational

inferences from those facts, reasonably warrant [the] intrusion"; and a single factor

consistent with innocent travel may, when combined with other facts, give rise to

reasonable suspicion). Construing the facts in the light most favorable to the

government -- the prevailing party -- we conclude that Bray had the requisite

reasonable suspicion to detain Irick beyond the initial traffic stop.

We review Irick's remaining arguments about evidentiary rulings for an

abuse of discretion. United States v. Perez-Oliveros, 479 F.3d 779, 783

(11th Cir.), cert. denied, 127 S.Ct. 2964 (2007). Irick contends that the district

court violated his Fifth Amendment rights by allowing officers to testify about

Irick's failure to answer certain questions after his arrest.

Two of Irick's challenges concern his post-arrest, post-Miranda[4]-warning

silence in refusing to identify the person who asked him to pick up the bag

containing the drugs. The district court did not abuse its discretion in allowing

testimony about this silence because Irick waived his Miranda rights, made

inculpatory statements, and then testified at trial about an alibi defense that

---

[4]Miranda v. Arizona, 86 S.Ct. 1602 (1966).

contradicted the inculpatory statements.[5] A defendant who "voluntarily speaks after receiving <u>Miranda</u> warnings" has not been "induced to remain silent", and the prosecution may cross-examine him at trial about prior inconsistent statements made after the warnings were given. <u>Anderson v. Charles</u>, 100 S.Ct. 2180, 2182 (1980); <u>see</u> <u>also</u> <u>Lofton v. Wainwright</u>, 620 F.2d 74, 77 (5th Cir. 1980) (concluding, in habeas context, that no Fifth Amendment violation occurred where defendant initially submitted to questioning, made inculpatory statements, then contradicted those statements at trial).

Irick also challenges Bray's trial testimony -- which came in response to a defense question on whether the officers tried to contact Irick's sister -- about Irick's post-arrest, but pre-<u>Miranda</u>-warning refusal to talk to officers; this testimony also does not violate the Fifth Amendment. <u>See</u> <u>Fletcher v. Weir</u>, 102 S.Ct. 1309, 1312 (1982) (comment about a defendant's post-arrest but pre-<u>Miranda</u>-warning silence does not violate the Fifth Amendment because the defendant has not been given "affirmative assurances embodied in the <u>Miranda</u> warnings" about the right to remain silent); <u>see</u> <u>also</u> <u>United States v. Chastain</u>, 198 F.3d 1338, 1351-52 (11th Cir. 1999) (if testimony about defendant's silence is

---

[5]Irick initially told officers that he suspected that the bag contained illegal drugs; but at trial, he testified that he did not know or consider what was in the bag.

responsive to defense counsel's question about the officer's investigation of a crime, that testimony will not be construed as a comment on the defendant's exercise of his right to remain silent).[6]

Irick also argues that the district court erred in admitting expert testimony about drug trafficking because it was irrelevant. But the testimony was relevant to Irick's knowing possession of and his intent to distribute the drugs. See United States v. Quilca-Carpio, 118 F.3d 719, 721-22 (11th Cir. 1997) (testimony about the quantity or value of drugs seized may be used to prove that a person caught with the drugs knew of their presence because a jury could infer that "a 'prudent smuggler' is not likely to entrust such valuable cargo to an innocent person without that person's knowledge"); United States v. Tinoco, 304 F.3d 1088, 1121 (11th Cir. 2002) (such testimony also is relevant to show defendant's intent to distribute because it may show that the drugs were "not for personal consumption, but for large-scale distribution"). Experts also properly may testify about the significance of certain conduct or methods of operation unique to the drug

---

[6]We note that Irick did not object to this testimony at trial; but even under the higher abuse of discretion standard, we discern no error.

7

distribution business. <u>United States v. Butler</u>, 102 F.3d 1191, 1199 (11th Cir. 1997).[7]

AFFIRMED.

---

[7]We reject Irick's argument that the testimony went beyond proper <u>modus</u> <u>operandi</u> testimony and created an improper drug courier profile that conformed to the evidence presented against Irick. <u>See</u> <u>United States v. Cross</u>, 928 F.2d 1030, 1050 n.66 (11th Cir. 1991). We also conclude that the admission of this testimony was not unfairly prejudicial under Fed.R.Evid. 403.