UNITED STATES of America, Plaintiff–Appellee,

v.

Richard D. FERNANDEZ, Jr., Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Steven E. GRANGER, Defendant–Appellant.

Nos. 93–2196, 93–2197.

United States Court of Appeals, Eleventh Circuit.

July 14, 1995.

---

Eugene F. Zenobi, Miami, FL, for appellants.

Randall Hensel, Asst. U.S. Atty., Pensacola, FL, for appellees.

Before KRAVITCH and HATCHETT, Circuit Judges, and CLARK, Senior Circuit Judge.

PER CURIAM:

Defendants-appellants Richard D. Fernandez, Jr., and Steven E. Granger were charged with manufacturing and possessing with intent to distribute marijuana, in violation of 21 U.S.C. § 841. The charges were filed after law enforcement officers conducting an aerial surveillance discovered and seized marijuana plants growing on and adjacent to a forty acre tract of land in rural Walton County, Florida. Granger, a former police officer, owned the property and lived in a house on the property. Fernandez lived in a nearby trailer, also on the property. Before trial, defendants filed a motion to suppress, contending that the warrantless search of the property and seizure of the marijuana and other evidence violated their Fourth Amendment rights. Following a suppression hearing, the district court denied the motion, holding that the initial observation of the marijuana by law enforcement officers did not constitute a "search" for Fourth Amendment purposes, that Granger's consent to the search of the property was voluntary, and that this consent was effective to authorize the search of the trailer in which Fernandez lived. Defendants subsequently pled guilty, and the district court sentenced Granger to 70 months in prison, and Fernandez to 120 months in prison. On appeal, defendants challenge the district court's denial of their motion to suppress and calculation of their sentences. For reasons explained below, we affirm defendants' convictions and sentences.

### I. The Motion to Suppress

#### A. The Evidence Offered at the Suppression Hearing

On August 29, 1992, Billy McKee and James Lorenz, law enforcement officers with the Walton County Sheriff's Department, conducted a routine aerial surveillance using a helicopter marked with the insignia of the Sheriff's Department. The purpose of the surveillance was to spot and destroy marijuana plants found growing in the county.

McKee, who was the pilot of the helicopter, testified that they were traveling at an altitude of approximately 500 feet when he spotted marijuana plants growing on a wooded patch of property that he later learned belonged to Granger. Lorenz testified that they were flying at an altitude of approximately 400 to 450 feet. After spotting the marijuana, McKee circled the area at a lower altitude, and he and Lorenz spotted more marijuana plants. McKee then contacted the Sheriff's Department to ask for ground support and landed the helicopter near the marijuana plants.

Defendants offered the testimony of a series of witnesses regarding the altitude of the helicopter as it approached Granger's property. Fernandez testified that the helicopter made its first approach over the property at an altitude of 150 or 200 feet. Granger testified that, when he first heard the helicopter, it was at tree-top level. Granger's neighbors testified that the helicopter was traveling at an altitude of approximately 100 feet when they first saw it. A private investigator offered his opinion that the helicopter would have had to have been flying at an altitude of less than 100 feet for the occupants to have spotted the marijuana plants; he doubted whether any marijuana plants could have been spotted from 500 feet.

After McKee landed the helicopter on Granger's property, Lorenz got out of the helicopter and confirmed that the plants they had spotted were marijuana. Lorenz then saw Granger walking toward him from the direction of Granger's house. Lorenz met Granger and explained that the officers had landed the helicopter because they had spotted marijuana on the property. Shortly thereafter, Lorenz's supervisor, Captain Chapman, arrived on the scene. As he was walking toward Granger and Lorenz, Chapman saw Fernandez walking near Granger's residence carrying a bucket containing what appeared to be marijuana. Chapman arrested Fernandez for possession of marijuana. The law enforcement officers then asked Fernandez for permission to search his trailer. Fernandez declined, stating that the trailer belonged to Granger and that they would have to obtain permission from him.

The law enforcement officers then sought Granger's permission to search the property. Lorenz read Granger a written Consent to Search Authorization, which provides:

> Before any search is made, you must understand your CONSTITUTIONAL RIGHTS:
>
> 1. You may refuse to consent to a search and may demand that a Search Warrant be obtained prior to any search of the property described below.
> 2. If you consent to a search, anything of evidentiary value seized in the course of the search can and may be introduced into evidence in a court proceeding.
> 3. At anytime during the search, you may revoke the officer/investigator's permission to search.
>
> .    .    .    .    .
>
> I have given this permission to search of my own free will. No promises have been made to me nor have I been threatened or coerced in any way.[1]

Granger signed the Consent to Search Authorization, thereby consenting to the search of his property, his residence, and all outbuildings located on the property. Both Granger and Fernandez testified that Granger signed the form under the assumption that he could be present during the search. Lorenz denied any such understanding; he testified that Granger never asked whether he could be present during the search. Shortly after Granger executed the Consent to Search Authorization, he was arrested, and he and Fernandez were transported to the Walton County jail while the search of the property was still ongoing. Granger did not complain about being taken from the scene and did not make any attempt to revoke his consent to the search.

### B. The District Court's Ruling on the Motion to Suppress

After hearing the evidence, the district court found that McKee had observed the marijuana plants while making a routine flight over the area at an altitude of 500 feet. The court found incredible the private investigator's testimony that the plants could not be spotted from this altitude. Thus, the court concluded that the initial observation of the marijuana plants did not violate defendants' Fourth Amendment rights. The district court further found that Granger's execution of the Consent to Search Authorization was voluntary; the court said: "I find this defendant to be a big, burly sort of guy, who is obviously not intimidated by this courtroom or any of the proceedings going on, and with the experience of an ex-policeman, certainly is familiar enough with all of the processes and procedures not to be intimidated by a smaller sheriff with whatever reputation he might have."[2] Finally, the district court found that Fernandez "did in fact acquiesce in the permission given by Granger" to search the trailer.[3] Accordingly, the district court denied the motion to suppress.

### C. The Standard of Review

■ The denial of a motion to suppress presents a mixed question of law and fact. We must defer to the district court's findings of fact unless clearly erroneous, but we are to review the district court's application of the law to the facts *de novo*. In reviewing the denial of a motion to suppress, we construe the facts in the light most favorable to the prevailing party below.[4]

■ The voluntariness of a defendant's consent to search is a question of fact to be determined from all the circumstances. Nevertheless, an appellate court must examine the entire record and make an independent determination of the ultimate issue of voluntariness.[5] "Normally, we will accord the district judge a great deal of deference regarding a finding of voluntariness, and we will disturb the ruling only if we are left with

---

1. Government Exh. 1.

2. R8–343.

3. *Id.*

4. *United States v. Hatch,* 931 F.2d 1478, 1480 (11th Cir.), *cert. denied,* 502 U.S. 883, 112 S.Ct. 235, 116 L.Ed.2d 191 (1991).

5. *United States v. Garcia,* 890 F.2d 355, 358 (11th Cir.1989).

the definite and firm conviction that the trial judge erred."[6]

### D. The Issues On Appeal

■ Defendants present three arguments in support of their contention that the district court should have granted the motion to suppress. First, they argue that the law enforcement officers' surveillance of the property violated the Fourth Amendment. Specifically, they argue: "[S]ince the initial observation was improper and violated the Defendants' privacy rights, the subsequent search of the property of both Defendants and of all evidence seized thereafter must be suppressed as tainted evidence."[7]

In *Florida v. Riley*,[8] the Supreme Court held that police surveillance of the interior of a partially covered greenhouse in a residential backyard from the vantage point of a helicopter located 400 feet above the greenhouse does not constitute a "search" for which a warrant is required under the Fourth Amendment. In a concurring opinion, Justice O'Connor suggested that aerial surveillance from altitudes of less than 400 feet may violate reasonable expectations of privacy.[9] Relying on this concurring opinion and on the testimony of their witnesses, defendants contend that McKee's initial observation of the marijuana plants was from an altitude of far less than 400 feet and, therefore, violated the Fourth Amendment.

In denying the motion to suppress, the district court made a factual finding that McKee had observed the marijuana plants from an altitude of 500 feet; in so finding, the district court credited the testimony of the law enforcement officers and specifically discredited the testimony of other witnesses, such as defendants' private investigator. Having carefully reviewed the record, we conclude that the district court's factual finding is not clearly erroneous. Thus, under *Riley*, McKee's initial observation of the marijuana plants from a vantage point of 500 feet did not constitute a "search" for Fourth Amendment purposes. Defendants' first argument is without merit.

■ Second, defendants argue that Granger's consent to the search was involuntary. Specifically, defendants contend that the law enforcement officers promised Granger he could be present for the search and then reneged on this promise by taking him to jail immediately after he signed the search authorization. Had the law enforcement officers made and reneged on such a promise, this argument would certainly have merit. Having carefully reviewed the record in this case, however, we are not persuaded that the law enforcement officers made such a promise. The Consent to Search Authorization that Granger signed says *nothing* about Granger's right to be present for the search. Indeed, immediately above Granger's signature, the Authorization provides: "No promises have been made to me nor have I been threatened or coerced in any way."[10] Lorenz, who read Granger the Consent to Search Authorization, testified that Granger never asked whether he could be present during the search. Moreover, as the district court noted, Granger had been a police officer and, therefore, was well aware of police procedures and of his rights. Nevertheless, he permitted himself to be taken to jail without so much as mentioning to anyone the alleged promise made to him. In light of this evidence, we cannot say that the district court erred in finding that Granger's consent to search was voluntary. Accordingly, defendants' second argument is without merit.

[5] Third, defendants argue that Granger's consent to search did not authorize the law enforcement officers to search the trailer in which Fernandez lived. The Supreme Court has held that a warrantless entry is valid when based upon the consent of a third party whom the police, at the time of entry, reasonably believed possessed common authority over the premises, even if the third party does not in fact possess such authori-

---

6. *Id.* at 359.

7. Appellants' Brief at 13.

8. 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989) (plurality opinion).

9. *Id.* at 455, 109 S.Ct. at 699 (O'Connor, J., concurring).

10. Government Exh. 1.

ty.[11] In this case, it is undisputed that Fernandez represented to the law enforcement officers that Granger had authority over the trailer. Accordingly, it was reasonable for the officers to conclude that Granger had the authority to consent to a search of the trailer, and we need not decide whether Granger did, in fact, possess common authority over the trailer. The district court did not err in finding that Granger's consent to search authorized the officers to search the trailer in which Fernandez lived.

## II. *The Sentencing*

■ Defendants challenge the district court's determination as to the amount of marijuana attributable to them for sentencing purposes. After hearing the evidence offered at the sentencing hearing, the district court made a factual finding that defendants' offense involved more than 400 marijuana plants. The applicable Sentencing Guideline provides that, in the case of an offense involving 50 or more marijuana plants, each plant is to be treated as equivalent to one kilogram of marijuana.[12] Thus, over defendants' objections, the district court calculated defendants' guideline range as if their offense involved more than 400 kilograms of marijuana. Defendants contend this was error.

First, defendants challenge the district court's factual finding that the offense involved more than 400 marijuana plants. At the sentencing hearing, Fernandez testified that only 91 marijuana plants were growing on or around Granger's property on August 29, 1992. Lorenz, on the other hand, testified that the officers seized 468 marijuana plants on and around Granger's property. Of these 468 plants, 18 were found already

cut on Granger's property, while the remaining 450 plants were cut or pulled up by the law enforcement officers. Lorenz testified that he counted the plants both as they were being loaded onto a truck on Granger's property and as they were being unloaded at the Walton County jail. The plants were later cut up, compacted, and placed in a storage box. The district court viewed this compacted marijuana at the end of the sentencing hearing. Then, specifically discrediting Fernandez's testimony, the district court found that the offense involved more than 400 marijuana plants. Given Lorenz's testimony, we cannot say that this finding is clearly erroneous.[13]

Second, defendants contend that the one-kilogram-per-plant equivalency that the district court used in calculating their guidelines range is "arbitrary" and "inherently flawed" because "not every plant is the same size and/or not every plant yields the same usable marijuana content."[14] This court has specifically rejected such substantive due process challenges to the one-kilogram-per-plant equivalency scheme.[15] Accordingly, the district court's conclusion that defendants' offense involved more than 400 kilograms of marijuana is not erroneous.

■ Fernandez raises two additional arguments regarding his sentencing. First, he contends that the district court erred in increasing his offense level based on his possession of a firearm. When the law enforcement officers searched the trailer in which Fernandez lived, they found several firearms, including a loaded .9 millimeter pistol. Relying on the presence of this pistol in the trailer, the district court increased Fernandez's offense level by two pursuant to

11. *Illinois v. Rodriguez,* 497 U.S. 177, 188–89, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990).

12. Specifically, U.S.S.G. § 2D1.1 provides: "In the case of an offense involving marihuana plants, if the offense involved (A) 50 or more marihuana plants, treat each plant as equivalent of 1 KG of marihuana; (B) fewer than 50 marihuana plants, treat each plant as equivalent to 100 G of marihuana. *Provided,* however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana."

13. *United States v. Robinson,* 935 F.2d 201, 205 (11th Cir.1991) ("This court reviews the trial court's determination of the quantity of drugs used to establish a base offense level for sentencing purposes under the clearly erroneous standard."), *cert. denied,* 502 U.S. 1037, 112 S.Ct. 885, 116 L.Ed.2d 789 (1992).

14. Appellant's Brief at 22.

15. *United States v. Osburn,* 955 F.2d 1500, 1505–10 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 223, 121 L.Ed.2d 160 (1992).

U.S.S.G. § 2D1.1(b)(1).[16] Fernandez contends that this adjustment was erroneous because the pistol was unrelated to the marijuana offense. The commentary to § 2D1.1 provides: "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."[17] In this case, Fernandez admitted in his testimony at the sentencing hearing that he used the back room of his trailer for drying marijuana; he also admitted that he stored marijuana in a refrigerator inside the trailer and in a freezer on the porch of the trailer. Given this evidence, the district court properly concluded that it is not "clearly improbable" that the pistol found in the trailer was connected with the offense. Accordingly, this argument is without merit.

█ Finally, Fernandez argues that the district court erred in enhancing his sentence pursuant to 21 U.S.C. § 841. Under § 841, a person who commits a federal drug violation, after a prior conviction for another state or federal drug offense has become final, is subject to an enhanced sentence. Specifically, subsection 841(b)(1)(B), which sets out the penalties for crimes involving more than 100 kilograms of marijuana, provides: "If any person commits such a violation after one or more prior convictions for an offense punishable under this paragraph, or for a felony under any ... other law of a State ... relating to narcotic drugs, marihuana, or depressant or stimulant substances, have become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years...." The district court imposed the mandatory minimum 10 year sentence on Fernandez because he had previously been sentenced to one year probation on a prior state drug offense, trafficking in cocaine. Fernandez argues that this prior state drug offense did not result in a "conviction" for purposes of § 841(b)(1)(B) because he pled *nolo contendere* and adjudication was withheld pending his service of the one year probationary period. Thus, he contends that the mandatory minimum 10 year sentence was not applicable to him.

This is the first time we have been called upon to determine whether a sentence of probation under a state deferral statute is a final "prior conviction" for purposes of the sentence enhancement provisions of § 841. We are not, however, without guidance in this area. In *United States v. Jones*,[18] a panel of this court held that a state case in which adjudication was withheld after a *nolo* plea qualified as a "prior felony conviction" to make the defendant eligible for career offender status under § 4B1.1 of the Sentencing Guidelines. If such a state case is considered a "conviction" for purposes of career offender status under U.S.S.G. § 4B1.1, we see no reason why it should not also be considered a "conviction" for purposes of enhancement under 21 U.S.C. § 841.

Fernandez relies on this court's decision in *United States v. Rockman*,[19] in which this court held that a prior offense in which the defendant pleaded *nolo contendere* and the state court withheld adjudication was not a "prior sentence" as defined in § 4A1.2(a)(1) of the Sentencing Guidelines. (Section 4A1.2 sets out the definitions and instructions for computing a defendant's criminal history score.) Section 4A1.2(a)(1) provides: "The term 'prior sentence' means any sentence previously imposed *upon adjudication of guilt*...."[20] The court in *Rockman* construed this unambiguous definition and determined that a "prior sentence" required an *adjudication of guilt*. The court specifically distinguished the *Jones* case, noting that the Guidelines did not define "conviction" for purposes of § 4B1.1, the Guideline at issue in *Jones*. Likewise, the statute that we construe, 21 U.S.C. § 841, does not define "conviction." There is nothing in either the Guidelines or in § 841 to indicate that the

---

16. U.S.S.G. § 2D1.1(b)(1) provides: "If a dangerous weapon (including a firearm) was possessed, increase [the base offense level] by 2 levels."

17. U.S.S.G. § 2D1.1, comment. (n. 3).

18. 910 F.2d 760, 761 (11th Cir.1990). *See also United States v. Garcia*, 727 F.2d 1028 (11th Cir.1984).

19. 993 F.2d 811 (11th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 900, 127 L.Ed.2d 92 (1994).

20. U.S.S.G. § 4A1.2(a)(1) (emphasis added).

**600**

definition of "prior sentence" in U.S.S.G. § 4A1.2 should have any bearing on the construction of "conviction" as used in the enhancement provision of 21 U.S.C. § 841. Accordingly, *Rockman* does not control this case.

We conclude that a state offense in which the defendant pleads *nolo contendere* and adjudication is withheld pending completion of probation constitutes a "prior conviction" for purposes of the enhancement provision of 21 U.S.C. § 841. Every circuit that has considered this issue has reached the same conclusion.[21] Accordingly, the district court in this case did not err in enhancing Fernandez's sentence under § 841(b)(1)(B) based on his prior state drug offense.

### III. *Conclusion*

For the reasons explained above, Granger's and Fernandez's convictions and sentences are AFFIRMED.

---

21. *See United States v. Gomez,* 24 F.3d 924, 930 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 280, 130 L.Ed.2d 196 (1994); *United States v. Meraz,* 998 F.2d 182, 183–85 (3d Cir.1993);

*United States v. Campbell,* 980 F.2d 245, 249–51 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2446, 124 L.Ed.2d 663 (1993).