[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 18, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13790
Non-Argument Calendar

_____

D. C. Docket No. 05-60248-CR-MGC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AARON RACCA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 18, 2007)

Before TJOFLAT, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Aaron Racca was charged in a three-count indictment with attempted

manufacture of methamphetamine, in violation of 21 U.S.C. § 846 (Count 1), maintaining a place for the purpose of manufacturing methamphetamine, in violation of 21 U.S.C. § 856(a)(1) (Count 2), and possession of chemicals and equipment to manufacture methamphetamine, in violation of 21 U.S.C. § 843(a)(6) (Count 3). After unsuccessfully moving the district court to suppress evidence obtained from his residential apartment and post-arrest statements he made to detectives of the Broward County, Florida sheriff's office, Racca entered a conditional plea of guilty to each count of the indictment, reserving the right to appeal the court's denial of his motion to suppress, and the court sentenced him to concurrent prison terms of 48 months. He now appeals his convictions.

Racca argues, first, that the district court erred in denying his motion to suppress evidence obtained in a search of his apartment. He consented to the search but contends that it was involuntary because he was under the influence of drugs at that time and he gave in to the officers' "show of force." He cites United States v. Edmondson, 791 F.2d 1512 (11th Cir. 1986), to explain how the sheer number of officers present at the scene made it impossible for him not to resist their request to conduct a search. Bearing on his will not to resist were these facts: (1) he was surrounded by at least five officers; (2) he was 23 years old at the time of his arrest; (3) he had a learning disability, (4) he was under the influence of

2

drugs; (5) he was read his <u>Miranda</u> rights[1] only after the search was finished; (6) (7) he was under arrest, because one of the officers said that he was not free to leave; (8) the officers misrepresented that they would get a search warrant if he did not consent to the search; (9) his consent occurred in a public place; and (10) as soon as the search was over, he ran from the scene and jumped into the ocean.

"The denial of a motion to suppress presents a mixed question of law and fact. We defer to the district court's findings of fact unless clearly erroneous, considering them in the light most favorable to the prevailing party, <u>United States v. Fernandez</u>, 58 F.3d 593, 596 (11th Cir. 1995), but review the court's application of the law to the facts <u>de novo</u>. "[T]he general rule in the criminal context is that warrantless searches are <u>per se</u> unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." <u>United States v. Gonzalez</u>, 71 F.3d 819, 825 (11th Cir. 1996) (quotations omitted). "[I]t is well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent to search." <u>Id.</u> at 827.

> The voluntariness of a defendant's consent to search is a question of fact to be determined from all the circumstances. Nevertheless, an appellate court must examine the entire record and make an independent determination of the ultimate issue of voluntariness.

---

[1]<u>Miranda v. Arizona</u>, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

> Normally, we will accord the district judge a great deal of deference regarding a finding of voluntariness, and we will disturb the ruling only if [it is] left with the definite and firm conviction that the trial judge erred.

Fernandez, 58 F.3d at 596-97.   In the context of a confession, while we

> must take into account [the defendant's] mental limitations, to determine whether through susceptibility to surrounding pressures or inability to comprehend the circumstances, the confession was not a product of his own free will, mental deficiencies of the defendant, by themselves, are not sufficient to render a confession involuntary.  To establish that his confession was involuntary, [the defendant] must also establish police coercion.

Moore v. Dugger, 856 F.2d 129, 132 (11th Cir. 1988) (citations omitted).  That the

police inform the party (whose premises are searched) that they will obtain a

search warrant absent consent does not establish coercion.  United States v. Garcia,

890 F.2d 355, 361 (11th Cir. 1989).

In this case, the district court did not clearly err in finding that Racca's

consent to search was voluntary.  In his Report and Recommendation to the district

court, which the court adopted in full after examining the record, the magistrate

judge found the testimony of Detective Robson to be more credible than that of the

apartment manager, Rachel Mendelson, and, therefore, rejected Mendelson's

testimony to the extent that it was inconsistent with Robson's.  In doing so, the

magistrate noted that Mendelson's testimony was both internally inconsistent and

inconsistent with other evidence.  Racca signed a consent to search form after

4

reading it twice and having it read to him once. Racca was not coerced into signing the consent to search form. Even if the officers had stated that they would get a warrant if he did not consent, this would not render his consent involuntary; that the police inform a party that they will obtain a warrant if the party does not consent to a search does not amount to coercion. Garcia, 890 F.2d at 361. In Garcia, we noted that the defendant "adduced no evidence indicating a lack of mental capacity to understand his actions." Id. That is the case here. While Racca asserts that he was high on drugs when he signed the consent form, the only testimony on this point at the suppression hearing was provided by Mendelson, and she admitted that she did not see Racca use drugs on the day of the arrest and did not know when he last used drugs. Additionally, to the extent that she inferred that Racca had a demonstrated diminished capacity when he signed the consent form, she was contradicted by Detective Robson, whose testimony the magistrate judge credited. The taped interview of Racca indicates that he was calm during his interrogation and answered questions clearly. The magistrate judge's findings are well supported by the record and, thus, are not "contrary to the laws of nature, or [] so inconsistent or improbable on [their] face that no reasonable factfinder would accept [them]." Pineiro, 389 F.3d at 1366.

As for Racca's apparent reliance on Edmondson, the Government correctly

5

points out that that case arose out of a situation factually dissimilar to this case and presented a different legal question regarding the matter of consent. In Edmondson, we considered, in relevant part, whether a suspect opening a door in response to the demands of FBI agents then stepping back from the door and placing his hands on his head constituted implied consent to be arrested. 791 F.2d at 1515. The question in this case is not whether consent was given, but whether it was voluntarily given. Here, Racca signed a consent form after reading it twice and having it read to him once. Given the record in this case, we could not say that the district court erred in finding Racca's consent voluntary.

Next, Racca argues that he invoked his right to remain silent by fleeing immediately after being read his Miranda rights. He says that, although a significant amount of time passed between his "invocation . . . of the right to remain silent" and his statement at the police station, there is no evidence that he initiated the conversation at the station. He emphasizes the fact that he was not re-read his Miranda rights at the police station; rather, he was merely reminded of them.

In Miranda v. Arizona, the Supreme Court considered the scope of the Fifth Amendment privilege against self-incrimination and held that the government "may not use statements, whether exculpatory or inculpatory, stemming from

6

custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). As with most rights, the accused may waive the right against self-incrimination, so long as the waiver is voluntary, knowing, and intelligent. Id. at 444, 86 S.Ct. at 1612. Where a defendant invokes his right to remain silent, the interrogation must cease. Id. at 473-74, 86 S.Ct. at 1627. "[A] suspect must articlulate his desire to end questioning with sufficient clarity so that a reasonable police officer would understand that statement to be an assertion of the right to remain silent. If the statement is ambiguous or equivocal, the police have no duty to clarify the suspect's intent, and they may proceed with the interrogation." United States v. Mikell, 102 F.3d 470, 476 (11th Cir. 1996). (citation omitted). Thus, "[t]he government has no duty to cease interrogating a suspect where the suspect's invocation of his Miranda rights is equivocal." United States v. Dowd, 451 F.3d 1244, 1250 (11th Cir. 2006) (quotation omitted).

Racca does not dispute that he was read his Miranda rights. His argument seems to be that by fleeing to the beach and jumping into the ocean he was invoking his right to remain silent. We are not persuaded. What he was communicating to the officers is that he wanted to get away – to escape arrest. The

7

officers perceived as much. His statement at the police station that he fled to the ocean because he had an "emotional moment" affirmatively indicated that his flight was not an attempt to invoke the right to remain. In sum, because Racca was read his <u>Miranda</u> rights, indicated that he understood them, and did not thereafter unequivocally invoke his right to remain silent, the district court committed no error in denying his motion to suppress.

AFFIRMED.