[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-15874

_____

D.C. Docket No. 1:13-cr-20334-CMA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSEPH PETER CLARKE,
BOBBY JENKINS,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 11, 2016)

ON PETITION FOR REHEARING

Before MARTIN and DUBINA, Circuit Judges, and RODGERS,[*] District Judge.

PER CURIAM:

_____

[*] Honorable Margaret C. Rodgers, Chief United States District Judge for the Northern District of Florida, sitting by designation.

We vacate our prior opinion in this case, issued March 17, 2015, and replace it with the following opinion.

Joseph Peter Clarke and Bobby Jenkins appeal their convictions of conspiracy to commit Hobbs Act robbery, 18 U.S.C. § 1951(a) (Count 1); conspiracy to possess with intent to distribute five or more kilograms of cocaine, 21 U.S.C. §§ 841(a)(1), 846 (Count 2); possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1) (Counts 3 and 4, respectively); and using and carrying a firearm during and in relation to a crime of violence and possession of a firearm in furtherance of a crime of violence, specifically, the Hobbs Act robbery, id. § 924(c)(1)(A) (Count 5).  The case concerns a reverse sting operation, in which the Defendants joined a fake conspiracy to rob a house of drug dealers.  Clarke and Jenkins challenge a number of aspects of their trial, conviction, and sentence. After careful consideration, and with the benefit of oral argument, we affirm.[1]

---

[1] We address in a separate opinion Jenkins's conviction under 18 U.S.C. § 922(g)(1) (Count 3), which makes it a federal offense for a person convicted of a felony to possess a firearm.  The government argued that Jenkins was a convicted felon because he had earlier pleaded guilty to possession of cocaine in Florida.  Although Jenkins was found guilty of cocaine possession, adjudication of that offense was withheld.  Whether a conviction qualifies under § 922(g)(1) is "determined in accordance with the law of the jurisdiction in which the proceedings were held."  18 U.S.C. § 921(a)(20).  We therefore certified to the Florida Supreme Court the question of whether that State treats a guilty plea with adjudication withheld as a "conviction" for purposes of its felon-in-possession statute.  Because the Florida Supreme Court answered this question "in the negative," Clarke v. United States, 184 So. 3d 1107, 1108 (Fla. 2016), we have vacated Jenkins's § 922(g)(1) conviction.

2

I.

On May 10, 2013, a grand jury returned a five-count indictment against Bobby Jenkins and Joseph Peter Clarke. The detective who engineered the reverse sting which led to the indictment was Kenneth Veloz, who had experience with these sorts of "proactive investigations" of "individuals that are interested in committing [armed] robbery." In this type of case, Detective Veloz typically proposed "an extremely violent scenario" to give the targets the "chance . . . to walk away if they [were] not interested in committing [a] robbery." Here, Detective Veloz first became interested in Jenkins when a confidential informant (CI) told him that Jenkins "may be interested in committing a robbery."

After a series of phone calls in which Detective Veloz thought Jenkins seemed to be interested in participating in the robbery, Detective Veloz set up three in-person meetings in which he posed as a drug trafficker. In the first, Detective Veloz represented that he routinely picked up and delivered kilogram quantities of cocaine for a group of drug traffickers, and that they had failed to adequately pay him for work he had done. He told Jenkins he needed someone to help him rob the traffickers. He said that they were violent drug dealers who would kill Detective Veloz and his family if they found out that he stole the cocaine. Jenkins responded that he and his "people" could handle the job, saying they were "certified." He also asked questions about the job, like what the dealers were "capable of, what

3

area they [worked] in, . . . what people[] they know," and whether they "hav[e] guns in there." Jenkins also said that he had "AR-15s that come from the army," and that he would wear a bulletproof vest.

Jenkins brought Clarke—an acquaintance—to the second meeting, and he, Clarke, Detective Veloz, and the CI continued to discuss the plan to rob the drug traffickers. Detective Veloz emphasized that these were dangerous people who "don't play" and stated that, personally, when it came to guns, "I'm running the other way." Still Jenkins persisted in asking questions, including the location of the house, who the "head" of the traffickers was, and whether there would be cash in the house along with the drugs. Clarke noted that if there were only two drug dealers in the house when they robbed them, "it shouldn't really be [an] issue as far as getting in and getting out." Both Jenkins and Clarke asked Detective Veloz if he wanted the traffickers dead, and Veloz responded "you could do what you got to do." Clarke suggested that he would need to kill them so that no one would know Detective Veloz was associated with them. And Clarke said he would need to "hit" Detective Veloz to make it look like Detective Veloz was not involved. In a follow-up phone call between the CI and Jenkins, Jenkins told the CI that he wanted the robbery "to get bloody regardless" because then the traffickers "can't talk."

At the third and final meeting, the same group discussed details of the robbery. Clarke repeatedly insisted that they be told the location in advance so they could plan their entry. Detective Veloz also told them there would be ten to fifteen kilograms of cocaine, and he and Clarke discussed splitting the drugs "fifty/fifty." Clarke noted that when he "move[s] [his] trigger, [he is] on precision," and that Detective Veloz should "get out of the way" if shooting begins. In a phone call the day before the robbery, Jenkins told the CI that everything was "good," but expressed concern that Detective Veloz might be involved with the police. The CI assured him that "everything [was] straight."

On the day of the robbery, the government provided a car to the CI, who picked up Jenkins and Clarke and drove them to the robbery location. When they arrived, a team of ATF Detectives converged on the car. Jenkins had a .40 caliber Sig Sauer handgun and was wearing gloves. Clarke dropped his loaded semiautomatic assault rifle in the back seat.

Both Clarke and Jenkins went to trial, where two juries were impaneled. Both were found guilty of all counts. Jenkins was sentenced to 240 months imprisonment for Counts 1 and 2, a concurrent 120-month sentence for Count 3, and a consecutive term of 60 months imprisonment for Count 5. Clarke was sentenced to life imprisonment for Counts 1, 2, and 4, and a consecutive life term

5

for Count 5.  Both timely appealed on a number of grounds, and we address each issue in turn.

## II.

Jenkins argues that six different errors at trial resulted in cumulative error, for which he should receive a new trial.  The cumulative-error doctrine provides that "an aggregation of non-reversible errors" can result in the denial of the constitutional right to a fair trial warranting reversal.  United States v. Baker, 432 F.3d 1189, 1224 (11th Cir. 2005) (quotation omitted).  We ask whether the combined effect of the errors had a "substantial influence on the outcome by weighing the record as a whole, examining the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt."  United States v. Hands, 184 F.3d 1322, 1329 (11th Cir. 1999) (internal quotation marks and citations omitted).

First, Jenkins argues that Detective Veloz's testimony "deliver[ed] a jury argument from the witness stand."  United States v. Cano, 289 F.3d 1354, 1363 (11th Cir. 2002).  During trial, Detective Veloz testified repeatedly, over objections, about the "significance" of various things Jenkins said during the recorded phone and in-person meetings.  See, e.g., Trial Tr. 24, Oct. 8, 2013, ECF No. 137 (Q: Now, what is the significance to your investigation of Mr. Jenkins making the statement, 'Yeah, yeah, yeah, yeah, that's the only reason I'm

6

[expletive] with it?"  A: Because it—he has an interest . . . That he had an interest because the outcome is . . . he's going to gain something."); id. at 45–46 (testifying that the phrase "certified" meant to Detective Veloz that Jenkins was "representing . . . that he is skilled to do this [crime]" and "has the intent to do this, the know-how, the ability to . . . commit this robbery"); id. at 51 (testifying that when Jenkins asked "who we are dealing with, basically, like what they are capable of, what area they be in, what area they [expletive] with, [and] what people they know," Detective Veloz understood those statements to mean he "want[s] to do intelligence, gather intelligence so that way they can plan on how to do this robbery").  Jenkins argues that this testimony allowed Detective Veloz to make judgments on the stand about the significance of Jenkins's statements that only the jury should have been allowed to make.

We cannot agree.  "[E]videntiary rulings will be disturbed on appeal only where there appears a clear abuse of discretion."  United States v. Taylor, 17 F.3d 333, 340 (11th Cir. 1994).  Beyond that, "[a] trial judge has broad discretion in controlling the extent of direct and cross-examination."  United States v. James, 510 F.2d 546, 551 (5th Cir. 1975).[2]  We understand the purpose of Detective Veloz's testimony explaining his impressions of Jenkins's statements was to

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

7

counter Jenkins's entrapment defense and explain to the jury why he proceeded with the reverse-sting operation at each stage of the investigation.  In this regard, this Court has noted that "an experienced narcotics agent may testify about the significance of certain conduct or methods of operation unique to the drug distribution business."  United States v. Butler, 102 F.3d 1191, 1199 (11th Cir. 1997) (quotation omitted).  We recognize the need for the government to explain Jenkins's testimony to a jury that may not be familiar with the language used throughout the phone calls and meetings.  The district court did not abuse its discretion by allowing this testimony at trial.

Relatedly, Jenkins argues that when Detective Veloz compared Jenkins's actions to the actions of others in reverse-sting operations based on Detective Veloz's experience, he was improperly acting as an expert witness.  See, e.g., Trial Tr. 41–42, Oct. 8, 2013, ECF No. 137 (noting that in most cases, when targets hear that people could die, "[t]hey usually say it right there, this is too much for me, or . . . they won't call back, they won't return, they won't want to meet"); id. at 46 ("Mr. Jenkins is representing this to me, based on my experience, is that he wants me to buy in that I should hire him to do this.").  Not so.  In United States v. Jayyousi, 657 F.3d 1085 (11th Cir. 2011), this Court held that a law enforcement agent involved in a terrorism investigation could draw inferences about the meaning of code words used during recorded conversations and relay those

8

inferences to the jury.  Unlike a case where an agent merely testified "about the meaning of a simple code that the jury could have deciphered easily based on evidence admitted at trial," in Jayyousi, the agent's "familiarity with the investigation allowed him to perceive the meaning of coded language that the jury could not have readily discerned." Id. at 1103.  This Court allowed the agent's testimony even though the district court admitted that "it appears as if this witness's training and experience to opine on what certain things mean is the investigation of this case." Id. at 1104 (quotation marks omitted).  So too here.  Detective Veloz was permitted to testify about the particular words Jenkins used based on his experience, and it was not an abuse of discretion for the district court to allow him to do so.

Second, Jenkins argues that it was improper for the district court to allow the prosecutor to ask a series of questions to Detective Veloz about whether certain things the CI told him about Jenkins "w[ere] true."  The CI initially told Detective Veloz that Jenkins "may be interested in committing a robbery."  According to Jenkins, questioning Detective Veloz about whether this statement was true violated the rule that "it is improper to ask a testifying [witness] whether another witness is lying" since such questions "invade the province of the jury." United States v. Schmitz, 634 F.3d 1247, 1268 (11th Cir. 2011).  We recognize that such a rule exists.  But here, read in context, it is clear that the prosecutor was not asking

9

Detective Veloz whether the CI's <u>testimony</u> was credible.  Rather, the prosecutor's purpose was to have Detective Veloz confirm Jenkins's interest in committing the crime based on having listened to the recorded conversations between Jenkins and the CI, not just the CI's statements at the start of the investigation.  This, again, was a justifiable attempt to counter Jenkins's entrapment defense.  We cannot say that the district court abused its discretion in allowing this testimony.  In fact, because Jenkins did not object to that question at trial, his argument on appeal is subject to plain-error review.  We see no plain error that affected his substantial rights here.  See <u>United States v. Olano</u>, 507 U.S. 725, 731–32, 113 S. Ct. 1770, 1776 (1993).

Jenkins points to four additional errors.  He argues that he suffered "spillover prejudice" from being erroneously characterized as a convicted felon.[3] He also argues that the district court abused its discretion by allowing evidence of

---

[3] As described above, we have vacated Jenkins's § 922(g)(1) conviction because the Florida Supreme Court has told us that his guilty plea with adjudication withheld is not a "conviction" for purposes of Florida's felon-in-possession statute.  <u>Clarke</u>, 184 So. 3d at 1108. In light of the Florida Supreme Court's response to our certified question, it's clear that it was error to call Jenkins a felon.  However, "[vacatur] of some counts . . . does not automatically warrant reversal of convictions reached on remaining counts" on the basis of spillover prejudice. <u>United States v. Prosperi</u>, 201 F.3d 1335, 1345 (11th Cir. 2000).  Rather, reversible spillover prejudice occurs only when "there [was] evidence (1) that would not have been admitted but for the [vacated counts] and (2) that [evidence] was improperly relied on by the jury in their consideration of the remaining [counts]." <u>Id.</u> Part of determining whether the jury improperly relied on evidence concerning a vacated count is "assess[ing] the strength of the evidence against the defendant on the remaining counts." <u>Id.</u> at 1346.  Because this inquiry dovetails with the harmless-error review we apply to Jenkins's overall cumulative-error claim, we do not address it here.

his prior conviction for cocaine possession under Federal Rule of Evidence 404(b).

He next argues that the district court committed plain error under Rule 404(b) by

allowing his NCIC criminal report to be brought into evidence.[4]  Finally, he argues

that the district court abused its discretion when it allowed the prosecutor to admit

expert-witness testimony suggesting he malingered on a disability evaluation in

order to gain Social Security benefits.  We do not address the merits of these four

arguments because even if Jenkins can show error, the cumulative error was

harmless.[5]  Under the cumulative-error doctrine, reversal is warranted only if the

---

[4] The government argues that the invited-error doctrine bars this argument because Jenkins had "no problem" and "no objection" to the government's introduction of the report.  But although Jenkins did not object, he also did not solicit the evidence.  The invited-error doctrine applies only when the party challenging the introduction of the evidence affirmatively asked for it, not when the party merely fails to object to its introduction.  When a party fails to object, the appellate court reviews the challenged evidence for plain error.  See United States v. Jones, 743 F.3d 826, 828 n.1 (11th Cir. 2014) (noting that the invited-error doctrine "does not apply" where the error is "not attributable to the action of the defense" because the defendant "failed to object to the error, but he did not ask for it" (quotation omitted)).

[5] We note, however, that despite the fact that any error was harmless, Jenkins's argument that the district court wrongfully allowed evidence of his prior conviction for cocaine possession is compelling.  Under Rule 403(b), "the probative value of . . . evidence must not be substantially outweighed by its undue prejudice."  United States v. Matthews, 431 F.3d 1296, 1310–11 (11th Cir. 2005) (per curiam) (quotation marks omitted).  Admittedly, we have said that "a not guilty plea in a drug conspiracy case . . . makes intent a material issue and opens the door to admission of prior drug-related offenses as highly probative, and not overly prejudicial, evidence of a defendant's intent."  United States v. Calderon, 127 F.3d 1314, 1332 (11th Cir. 1997).  For instance, we have held that "a three-year-old prior conviction for possession of cocaine for personal use was relevant and admissible for purposes of demonstrating defendant's intent in the charged conspiracy for possession with intent to distribute."  Matthews, 431 F.3d at 1311 (citing United States v. Butler, 102 F.3d 1191, 1195–96 (11th Cir. 1997)).  However, this is not a drug-conspiracy case.  This is a conspiracy to commit a violent, armed robbery of a house of drug dealers.  The fact that Jenkins was arrested for possession with intent to distribute, which resulted in his guilty plea for simple possession of cocaine, seems unlikely to be probative of whether he would have committed this robbery crime.  Still, we must affirm because any error was harmless.

11

combined effect of the errors had a "substantial influence on the outcome." Hands, 184 F.3d at 1329 (internal quotation marks and citations omitted). Looking to the record as a whole and examining all the facts, the recorded phone calls and in-person meetings are difficult for Jenkins to overcome on harmless-error review. Throughout those recordings, Jenkins discussed details of the proposed crime, never backed out even when they talked about killing the traffickers, and suggested that he wanted the robbery to be "bloody." Beyond that, the fact that he arrived at the location of the proposed crime with a firearm in hand is powerful evidence that a jury would have found persuasive beyond a reasonable doubt. In short, these purported trial errors, even taken together, are harmless. We cannot reverse Jenkins's convictions on this basis.

### III.

Clarke argues, in the same way, that the district court abused its discretion by admitting evidence of his 2006 burglary conviction. He says that the conviction was not probative of his intent to commit the robbery, the conviction occurred seven years ago, and the government did not need the evidence because it had audio and video recordings of the offense. Clarke makes a colorable argument that this 2006 burglary of an electronics store is so different and so remote in time from the attempted armed robbery of a house of drug traffickers that the district court may have erred in admitting it. However, "[w]e review preserved evidentiary

12

objections for harmless error." Baker, 432 F.3d at 1202. As with Jenkins, there is overwhelming evidence of Clarke's guilt. He was recorded during numerous phone calls and in-person meetings planning the robbery; he described his plans to shoot and kill the occupants of the house if they resisted; and he arrived at the scene with gloves and a firearm on the appointed date. We cannot reverse because this prior conviction was admitted.

IV.

Next, Jenkins argues that the government engaged in sentencing-factor manipulation by selecting a quantity of cocaine—ten to fifteen kilograms— sufficient to trigger a ten-year mandatory-minimum sentence. This Court has "considered sentencing manipulation as a viable defense." United States v. Ciszkowski, 492 F.3d 1264, 1270 (11th Cir. 2007). "[S]entencing factor manipulation occurs when the government's manipulation of a sting operation, even if insufficient to support a due process claim, requires that the manipulation be filtered out of the sentencing calculus." Id. The bar is "high": we have generally noted that "[g]overnment-created reverse sting operations are recognized and useful methods of law enforcement investigation." Id. at 1271. Thus, to find sentencing factor manipulation, we must find that the government's conduct was, as we have put it, "so objectionable" or "sufficiently reprehensible" or "extraordinary misconduct." Id. at 1270–71.

13

We cannot say that the government's conduct in this case met that high bar.

In United States v. Sanchez, 138 F.3d 1410 (11th Cir. 1998), the

> [d]efendants argue[d] that the conduct of the government in creating a fictitious crime for them to commit—robbery of a non-existent house allegedly stocked with large quantities of cocaine and marijuana, which did not in fact exist—was so outrageous as to warrant either dismissal of the superseding indictment, or reversal of their convictions, or a downward departure of their sentences.

Id. at 1413.  Regarding the sentencing-factor-manipulation claim in Sanchez, this Court held that "[t]he fact that the government's fictitious reverse sting operation involved a large quantity of drugs does not amount to the type of manipulative governmental conduct warranting a downward departure in sentencing." Id. at 1414.  So too here.  Detective Veloz testified that the ten- to fifteen-kilogram amount was simply "realistic[]."  Trial Tr. 50–51, Oct. 8, 2013, ECF No. 137 ("Q: Why not pose 35 kilos?  A: Well, realistically, nowadays home invasions that I have investigated and that—that my unit has been involved in, that quantity amount is not as prevalent as it was back, you know, in the '80s.").

Jenkins argues that Sanchez is distinguishable because in that case, "[t]he availability of defendants, their weapons, and vehicles was not the result of any governmental activity."  Id. at 1414.  By contrast, the government here provided Jenkins and Clarke with a car in order to commit the crime.  However, our precedent makes clear that this fact is not dispositive.  See Ciszkowski, 492 F.3d at

1271 ("The fact that law enforcement may provide drugs or guns essential to a willing and predisposed offender does not necessarily constitute misconduct.").

We have certainly taken note that the government went to great lengths to construct a violent plan here. This is especially striking in light of the fact that before this incident, Jenkins had never engaged in anything like the violent armed robbery that he attempted here. However, all Jenkins is challenging on appeal is the government's decision to quantify the amount of cocaine at ten to fifteen kilograms instead of, say, two kilograms. We cannot agree that this amount is a particularly "objectionable" or "extraordinary" quantity of cocaine. The district court did not err.

## V.

Next, both Jenkins and Clarke argue that the jury instructions constructively amended the indictment on Count 5, the count for using and carrying a firearm during and in relation to a crime of violence and possession of a firearm in furtherance of a crime of violence. "[A] court cannot permit a defendant to be tried on charges that are not made in the indictment against him." Stirone v. United States, 361 U.S. 212, 217, 80 S. Ct. 270, 273 (1960). Under this rule, a district court may not constructively amend the indictment. See id. at 215–16, 80 S. Ct. at 272. A constructive amendment "occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for

15

conviction beyond what is contained in the indictment." United States v. Keller, 916 F.2d 628, 634 (11th Cir. 1990).

Here, although Jenkins and Clarke were convicted of knowingly using and carrying a firearm during and in relation to a crime of violence, and knowingly possessing that firearm in furtherance of a crime of violence, the district court's definition of "possession" in the jury instructions repeatedly referred to a "drug trafficking" crime.[6]  At first, the court correctly said that "it is a separate federal crime for anyone to use, carry, possess[] or brandish a firearm in furtherance of a crime of violence."  However, the district court then went on to say that "[t]o 'possess' a firearm is to have a firearm on one's person or to transport or control a firearm in a way that makes it available for immediate use while committing the drug-trafficking crime" (emphasis added).  The Court continued that "[s]ome factors to consider are the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, [and] proximity to the drugs" (emphasis added).  In short, the jury instructions referred to a "drug-trafficking crime" when they should have referred to a "crime of violence."  The government admits in its brief that "[an] error occurred."

However, neither Clarke nor Jenkins objected to the jury instructions at trial.

---

[6] A drug-trafficking offense is not a "crime of violence" for purposes of Section 924(c). See United States v. Cruz, 805 F.2d 1464, 1474 (11th Cir. 1986).

> [W]e may only reverse a defendant's conviction based on an unobjected-to constructive amendment if the constructive amendment satisfies the Olano[7] plain-error standard. That is, the amendment must (1) be an error (2) that is plain (3) that affects the defendant's substantial rights and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings.

United States v. Madden, 733 F.3d 1314, 1321 (11th Cir. 2013). In Madden, we held that a district court's constructive amendment of the indictment met the plain-error standard for reversal. There, while the indictment stated that the defendant "did knowingly use and carry a firearm during and in relation to a crime of violence and did knowingly possess a firearm in furtherance of a drug trafficking crime," the jury instructions stated that "[t]he superseding indictment alleges that the defendant knowingly carried a firearm during and in relation to a drug trafficking offense or possessed a firearm in furtherance of a drug trafficking offense." Id. at 1318 (emphasis added). In other words, the instructions allowed for a conviction of carrying a firearm during and in relation to a drug trafficking offense, but the indictment charged the defendant with possessing a firearm only in furtherance of a drug trafficking offense. We noted in that case that "adding 'during and in relation to' broadened the possible bases for conviction beyond what was specified in the superseding indictment," because "'in furtherance of' is narrower than 'during and in relation to.'" Id.

_____

[7] Olano, 507 U.S. 725, 113 S. Ct. 1770.

17

We held that this constructive amendment met <u>Olano</u>'s plain-error standard. First, there was error because "constructively amending an indictment is a departure from the legal rule that a defendant can only be convicted for a crime charged in the indictment." <u>Id.</u> at 1322 (quotation omitted).  Second, the error was plain because "[i]t [was] clear that 'in furtherance of' and 'during and in relation to' are alternative methods of conviction[,] [a]nd it [was] clear under current law that a court errs when it allows for an alternative method of conviction that is not included in the indictment." <u>Id.</u> (citation omitted).  Third, the error affected Madden's substantial rights because "Madden may well have been convicted on a charge not in the indictment.  In the end, . . . we [could not] say with certainty that with the constructive amendment, Madden was convicted solely on the charge made in the indictment." <u>Id.</u> at 1323 (quotation omitted).  Fourth, "we f[ou]nd it self-evident . . . that the error seriously affect[ed] the fairness, integrity and public reputation of judicial proceedings." <u>Id.</u>

Although it is a close case, the jury-instruction error here is sufficiently different from the one in <u>Madden</u> that we cannot say that it affected Jenkins's and Clarke's substantial rights.  For one thing, the instructions clearly and correctly set forth the elements of the offense before erroneously referring to "drug trafficking" when defining the term "possess."  Beyond that, because the government repeatedly argued during its closing that the crime of violence at issue was

"narcotics-related robberies" and that "robbery is violent," we find it certain that the jury would have understood that firearms were possessed with respect to the robbery. Finally, unlike in <u>Madden</u>, where the amendment encompassed a broader range of conduct than what was charged in the indictment, no new element was added here. And while there actually was a drug-trafficking crime charged in <u>Madden</u>, and the jury could therefore have reasonably been confused, there was no drug-trafficking crime at issue here. The only offense during which Jenkins and Clarke could have possibly used a firearm was the Hobbs Act robbery. The jury could not have convicted Jenkins and Clarke for using and carrying a firearm during and in relation to a drug-trafficking crime when no drug-trafficking crime was ever mentioned before the misstatements in the jury instructions. Thus, we cannot say that the error affected their substantial rights, and we find no plain error.

VI.

Next, Jenkins argues that his Sixth Amendment rights were violated when the prosecutor refused to withdraw a Section 851 notice of enhancement after he declined to enter a guilty plea. At a status conference before trial, the prosecutor said that "[t]he government has told [Jenkins's lawyer] that it would be willing to withdraw the information based on what he has put forward. . . . [A]fter that plea expiration deadline, the government would not do that." "[W]hat he has put

19

forward" is, we assume, the Social Security documents that suggest that Jenkins is "mildly, mentally retarded," as discussed earlier in that status conference.  Jenkins argues that because the prosecutor suggested he was willing to withdraw the enhancement based on what Jenkins had put forward, the government conceded that the twenty-year mandatory-minimum sentence was not warranted in light of his disability, but applied it anyway because he refused to plead guilty.

Jenkins's argument is precluded by precedent of the Supreme Court and this Court.  In Bordenkircher v. Hayes, 434 U.S. 357, 98 S. Ct. 663 (1978), the Supreme Court addressed "whether the Due Process Clause of the Fourteenth Amendment is violated when a state prosecutor carries out a threat made during plea negotiations to reindict the accused on more serious charges if he does not plead guilty to the offense with which he was originally charged."  Id. at 358, 98 S. Ct. at 665.  The Court held that "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."  Id. at 364, 98 S. Ct. at 668.  In United States v. Darby, 744 F.2d 1508 (11th Cir. 1984), we applied the Bordenkircher rule to a case in which "the government expressed its intent to seek sentence enhancement under section 849 and offered to forego prosecution as a dangerous special drug offender if [the Defendant] would plead guilty as charged."  Id. at

20

1539. The Defendant refused the offer, was sentenced under Section 849, and challenged the sentence enhancement as a "vindictive effort to penalize his exercising his right to trial by jury." Id. This Court said that "case [was] indistinguishable from Bordenkircher. [The Defendant] was fully informed of the terms of the plea offer and simply declined to accept. Accordingly, we f[ou]nd no support for his claim of prosecutorial vindictiveness." Id. (footnote omitted).

We are bound by our ruling in Darby. Although it is certainly true that the prosecutor considered withdrawing the section 851 notice during plea negotiations, he was fully within his rights under the law to apply the enhancement. That he used the application of the enhancement to try to convince Jenkins to plead guilty is no different from the facts in Darby. Jenkins has therefore failed to make out a claim of prosecutorial vindictiveness in violation of his Sixth-Amendment rights.

## VII.

Jenkins next argues that his prior Florida arrest, for which adjudication was withheld and he received a suspended sentence, should not qualify as a prior conviction under 21 U.S.C. §§ 841 and 851.[8] He argues that we should follow the definition of "conviction" used in the Immigration and Nationality Act (INA). He

---

[8] This question is different from the one Jenkins raised with regard to his section 922(g)(1) charge. For section 922(g)(1), we look to whether Florida state law treats the prior arrest as a "conviction" for Florida's felon-in-possession law. Here, we look to federal law. See United States v. Mejias, 47 F.3d 401, 403–04 (11th Cir. 1995) (per curiam) ("[F]ederal law, rather than state law, governs the interpretation of section 841(b)(1)(B).").

21

notes that immigration law and criminal law both fall within the federal scheme, and since "[t]he general analytical framework and principles . . . are analogous," we "routinely import[] holdings from one context to the other." Donawa v. U.S. Att'y Gen., 735 F.3d 1275, 1280 n.3 (11th Cir. 2013). The INA definition says that a "conviction" includes a situation where an "adjudication of guilt has been withheld" if "a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted facts to warrant a finding of guilt and the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed." 8 U.S.C. § 1101(a)(48)(A) (emphasis added). Here, the adjudication was withheld and no form of punishment was imposed—the sentence was suspended.

Because Jenkins did not raise this argument in the district court, it is subject to plain-error review. An error is plain only if precedent of this Court or the Supreme Court or the unequivocal language of a statute establishes that the decision was erroneous. United States v. Johnson, 694 F.3d 1192, 1195 (11th Cir. 2012). There is no precedent of this Court or the Supreme Court that clearly holds that the district court's acceptance of the Section 851 enhancement was erroneous. In fact, there is precedent suggesting the opposite. In Mejias, we held that "Mejias' prior plea of nolo contendere with adjudication withheld in Florida state court is a 'conviction' that supports an enhanced sentence under section

22

841(b)(1)(B)."  47 F.3d at 404.  And in United States v. Fernandez, 234 F.3d 1345 (11th Cir. 2000) (per curiam), we reaffirmed that "a prior state court nolo plea in which adjudication was withheld can be used as a conviction to make the defendant eligible for career-offender status under the Sentencing Guidelines."  Id. at 1347.

We recognize that Jenkins is not merely arguing that he had his adjudication withheld; he is also arguing that he received a suspended sentence.  The defendant in Mejias was sentenced to probation, and so it could be argued that he received "some form of punishment, penalty, or restraint on the alien's liberty" under the INA.  8 U.S.C. § 1101(a)(48)(A)(ii); see also Appellant's Initial Br., Mejias, No. 91-4020, 1994 WL 16056228, at *8 (noting that "adjudication [was] withheld pending successful completion of probation, and probation [was] successfully completed"); Fernandez, 58 F.3d at 600 (holding "that a state offense in which the defendant pleads nolo contendere and adjudication is withheld pending completion of probation constitutes a 'prior conviction' for purposes of the enhancement provision of 21 U.S.C. § 841" (emphasis added)).  However, this distinction between the present case and Mejias is not enough to overcome plain-error review. Because there is no controlling precedent on point, we cannot say that the district court plainly erred in holding that Jenkins's state felony was a conviction even if adjudication was withheld and he was not punished or penalized in any way.

23

VIII.

Jenkins next argues that his conviction under the Hobbs Act and Section 924(c) are unconstitutional after the Supreme Court's recent decision upholding the Affordable Care Act in National Federation of Independent Business v. Sebelius, 567 U.S. ___, 132 S. Ct. 2566 (2012) (NFIB).  Although constitutional issues are generally reviewed de novo, we review them only for plain error when a defendant fails to raise them before the district court.  United States v. Underwood, 446 F.3d 1340, 1344 (11th Cir. 2006).  Jenkins admits that in United States v. Taylor, 480 F.3d 1025 (11th Cir. 2007), we held that "[t]he interstate nexus" can be shown in a Hobbs Act conspiracy even when the "intended victims and narcotics [are] fictional."  Id. at 1027.  But he argues that decision "has since been called into question" by NFIB.  There, the Court held that the Affordable Care Act could not be sustained under the commerce power because "[t]he power to regulate commerce presupposes the existence of commercial activity to be regulated." NFIB, 132 S. Ct. at 2586 (emphasis omitted).  However, although NFIB did address the Commerce Clause generally, the Supreme Court gave no indication that it was overruling the numerous circuit-court opinions upholding the Hobbs Act on Commerce-Clause grounds.  This Court is bound to follow its prior precedent unless it is overruled by the Court sitting en banc or by the Supreme Court.  United States v. Martinez, 606 F.3d 1303, 1305 (11th Cir. 2010).  We cannot say the

24

district court committed plain error by failing to find that the Supreme Court has implicitly overruled our prior precedent.

## IX.

Finally, Jenkins argues that the district court lacked the authority to enhance his sentence based on his prior conviction because that prior conviction was neither alleged in the indictment nor proven to the jury.  This argument is foreclosed by binding precedent of the Supreme Court.  See Almendarez-Torres v. United States, 523 U.S. 224, 235, 118 S. Ct. 1219, 1226 (1998).

## X.

For all these reasons, we affirm on each of the issues considered here.

**AFFIRMED.**